LEWYELLN MODJESKI v. FEDERAL BAKERY
OF WINONA, INC. AND ANOTHER.

240 N. W. 2d 542.

March 19, 1976—No. 45562.

---

*Robins, Davis & Lyons, James F. Dunn,* and *Arnold M. Bellis,* for relator.

*Mahoney, Dougherty & Mahoney, Kenneth Gleason,* and *Richard P. Mahoney,* for respondent.

Heard before Rogosheske, Yetka, and Amdahl, JJ., and considered and decided by the court en banc.

DOUGLAS K. AMDAHL, JUSTICE.*

Writ of certiorari to review a decision of the Workers' Compensation Board granting credit to an employer for sums received by an employee's widow from settlement of a wrongful death action.

On August 12, 1968, while in the course of his employment with Federal Bakery of Winona, Inc. (employer), George Modjeski (decedent) was fatally injured as the result of an elevator malfunction. Employers Mutual Liability Company of Wisconsin (insurer) was then employer's liability and compensation insurer.

On October 3, 1968, decedent's widow, Lewyelln, was awarded workers' compensation benefits, payable by the insurer, and the latter commenced payment of weekly benefits.

The widow was appointed trustee for the heirs of George Modjeski, and on March 10, 1969, commenced a wrongful death action against the insurer and Atwell, Vogel & Sterling, Inc.

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

(AVS). The latter had been employed by the insurer to make inspections of the elevator and had made inspections prior to Mr. Modjeski's death. By order dated October 17, 1969, a motion of the insurer for summary judgment as to it was granted.

The trustee and AVS settled and compromised the action for the sum of $9,300, and the trustee executed a release. The release recognized that the maximum amount payable under the workers' compensation dependency benefit award was $25,000 and that the maximum wrongful death recovery was $35,000 and stated that the parties settled and compromised only the $10,000 of the wrongful death claim which was in excess of the workers' compensation liability limit.

Although neither the insurer nor the employer was a party to the release, the trustee-widow and AVS attempted to affect the right of the employer and insurer to the credit provided by Minn. St. 1967, § 176.061, subd. 5.[1] The intent of the parties to so limit the effect of the settlement is well stated in the following paragraph from the release:

"Both parties recognize and agree that the Modjeski dependents further reserve all rights they have or may have by reason of the Workmen's Compensation Laws of the State of Minnesota. It is expressly understood and agreed by and between the parties hereto that the plaintiff herein shall not be required to give credit to the Employers of Wausau or Federal Baking Company because the consideration paid herein is not intended to affect their rights in any manner and is intended only as a payment towards the rights accruing to the plaintiff over and above the workmen's compensation law and does not represent reimbursement of any amounts received by her under the workmen's compensation law."

---

[1] The designation "employer" is used in the cited subdivision and the designation "insurer" does not appear. However, the substantial identity of the two for the purposes of the subdivision has caused the courts and counsel to use the designations interchangeably in discussing the subdivision.

On April 3, 1970, the court approved the settlement and ordered a distribution of its proceeds whereby $5,401.23 was paid to the widow.

The employer did not choose to exercise a subrogation claim against AVS but on November 28, 1973, filed a petition with the Workers' Compensation Board for credit against future compensation payments in the sum received by the widow from the settlement with AVS. The Workers' Compensation Board affirmed the findings and determination of the compensation judge granting the petition, and the widow sought review here.

The issue is: Where neither the employer nor its insurer is a party to a settlement by and between a deceased employee's wrongful-death-action trustee and a third party of what is purported to be only a claim for an amount which is in excess of maximum workers' compensation benefits, is the employer precluded from exercising its right under Minn. St. 1967, § 176.061, subd. 5, to "deduct from the compensation payable by [it] the amount actually received by" the employee's dependents?

■ It is clear that funds recovered by way of settlement or trial through a wrongful death action brought in behalf of an employee's dependents were not excluded from the operation of Minn. St. 1967, § 176.061, subd. 5. The first sentence of the subdivision provided:

"Where an injury *or death* for which compensation is payable is caused under circumstances which created a legal liability for damages on the part of a party other than the employer, * * * legal proceedings may be taken by the employee *or his dependents* against the other party to recover damages, notwithstanding the payment by the employer or his liability to pay compensation." (Italics supplied.)

The second sentence of subd. 5 is the basis for the employer's claim for credit:

"* * * If the action against such other party is brought by the injured employee or his dependents and a judgment is ob-

tained and paid and [2] settlement is made with the other party, the employer may deduct from the compensation payable by him the amount actually received by the employee or dependents after deducting costs, reasonable attorney's fees, and reasonable expenses incurred by the employee or dependents in making collections or enforcing liability."

Minn. St. 1967, § 176.061, subd. 5, as applicable here, is "clear and free from all ambiguity," and the court may not disregard its language. Minn. St. 645.16.

The right of the employee or his dependents to settle a claim against a third party without affecting the subrogation right of the employer is well established. In Liberty Mutual Ins. Co. v. Nutting Truck & Caster Co. 295 Minn. 211, 216, 203 N. W. 2d 542, 545 (1973), this court stated:

"In addition, when an employee has received workmen's compensation and then commences an action against a third party, the employee has a right to dispose of his claim for bodily injuries against the third party by excluding from the settlement any amounts due his employer and insurer by way of subrogation. The employee can make this type of separate settlement, but such a settlement does not affect the rights of the employer or the workmen's compensation carrier to continue its statutory subrogation action against the third-party tortfeasor for the amount the employer or insurance carrier has paid the employee under the compensation act."

The court's primary concern in Liberty Mutual was to protect the employer's subrogation rights from being terminated by a settlement executed without its knowledge or consent. This concern is illuminated by the decision in Lang v. William Bros Boiler & Mfg. Co. 250 Minn. 521, 85 N. W. 2d 412 (1957). There, the court rejected the rule prevailing in some jurisdictions that

---

[2] Read "and" as "or" here. Lang v. William Bros Boiler & Mfg. Co. 250 Minn. 521, 530, 85 N. W. 2d 412, 419 (1957).

the employee could not settle without the knowledge or consent of the employer, stating:

"* * * Apparently the decisions which follow the rule that the employee cannot settle without the consent of the employer are based on the thought that such settlement will cut off the right of the employer to proceed against the third party." 250 Minn. 528, 85 N. W. 2d 417.

The court in Lang concluded:

"* * * In view of our decision above, the rights of the [insurer] to recover for payments that become payable in the future *in excess of the credit against such payments* created by virtue of this settlement are not affected by the dismissal of the action." (Italics supplied.) 250 Minn. 531, 85 N. W. 2d 419.

Thus, the Lang decision specifically recognized that the settlement amount would remain subject to credit. Liberty Mutual, while discussing the insurer's subrogation rights, is silent with respect to the credit issue. It should not be given the significance of implicitly changing Lang or the statute.

Relator argues that the "right" of the employee to settle separately may be negated if the insurer is permitted to forego subrogation and instead claim credit. This is so, but the statute gives the option.[3]

The relator cites Enghusen v. H. Christiansen & Sons, Inc. 259 Minn. 442, 107 N. W. 2d 843 (1961), as authority for the statement: "* * * [I]f there is a recovery of funds * * * which exceed amounts payable under the Workmen's Compensation Act, the compensation insurer may not use such recovery as an offset against compensation liability."

In Enghusen, the insurer tried to get something for nothing

---

[3] The legislature recognized the inherent problem and, in L. 1969, c. 199, § 2, amended Minn. St. 1967, § 176.061, subd. 6, and there provided that after deducting attorneys fees and costs from the settlement amount, one-third of the remainder should be paid to the employee or his dependents free of any claim for subrogation or credit.

since it had been reimbursed for all compensation benefits paid and payable to an employee's widow who had remarried. The court there summarized the employer's right in this manner:

"* * * The employer's right of action is not measured by the extent of damages to the employee or his dependents but solely by the aggregate amount of the employer's compensation liabilities." 259 Minn. 451, 107 N. W. 2d 849.

Mr. Justice Knutson, writing for the court in Lang v. William Bros Boiler & Mfg. Co. *supra,* after analyzing cases involving the employer's right where the employee had settled with a third party, succinctly observed:

"Underlying all these cases seems to run the general thought that the employer, having been given a right of indemnification for compensation paid, should not have such right affected by a settlement to which he is not a party." 250 Minn. 528, 85 N. W. 2d 417.

So it must be here, and we hold that the employer's right to credit under Minn. St. 1967, § 176.061, subd. 5, was not affected by the release to which it was not a party and, therefore, was unaffected by the assertion in such release that the settlement was only of that part of the wrongful death claim which was in excess of the workers' compensation liability limit.

■ Relator, in her brief filed with this court, contends that "the insurer's so-called election of remedies to take against the widow is barred by the defense of laches."

That contention is based on the fact that the insurer was provided with a copy of the petition and the order for distribution of the settlement proceeds about May 18, 1970, and the petition for credit was not filed until November 28, 1973. Thus, for more than 3½ years before it instituted the proceedings to stop the monthly compensation payments to the widow until it had received credit against compensation for the amount received by her from the settlement with AVS, the insurer had had full knowledge of the settlement, of the distribution of the settlement

proceeds, and of the assertion in the settlement documents that the proceeds were not subject to a claim for credit. Unless facts exist justifying the insurer's conduct, the delay in filing for credit is inexcusable and is a defense to the claim for credit.

The Workers' Compensation Board has invoked the doctrine of laches in its own proceedings. Bourdeaux v. Gilbert Motor Co. 13 Minn. W. C. D. 276 (1944); Schmillen v. Dave Schroeder Grocery, 19 Minn. W. C. D. 81 (1956). It should have done so under the circumstances of this proceeding. The problem is primarily one of factual, not legal, determination. Laches consists of more than a mere failure to act. It requires that prejudice result from the failure to act. The determination of prejudice must be based upon factual considerations and we therefore remand this matter to the Workers' Compensation Board for a hearing on, and determination of, the issue of laches.

Relator is allowed $400 attorneys fees.

Remanded.