Melvin W. NAIG, Relator,

v.

BLOOMINGTON SANITATION, et al., Respondents,

State Treasurer, Custodian of the Special Fund.

No. 46983.

Supreme Court of Minnesota.

Oct. 7, 1977.

Richard C. Smith and Larry Meuwissen, Minneapolis, for relator.

Van Eps & Gilmore and George R. Benton, Minneapolis, for Bloomington Sanitation et al.

Warren Spannaus, Atty. Gen. and Winston Ehlmann, Sp. Asst. Atty. Gen., St. Paul, for State Treasurer.

Heard before KELLY, TODD, and YETKA, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Relator seeks review by writ of certiorari of a decision of the Worker's Compensation Court of Appeals crediting part of a third-party tort settlement against claims by relator for compensation benefits exclusive of medical expenses. We affirm in part and reverse in part.

On January 8, 1970, relator suffered an injury arising from and in the course of his employment with Bloomington Sanitation. Bituminous Casualty Corporation provided worker's compensation coverage for Bloomington Sanitation and relator received compensation benefits.

The circumstances of relator's injury gave rise to a tort action, prosecuted by relator and his wife, against several third parties. The employer and its compensation insurer were advised of the initiation of this action and the insurer agreed to permit relator's attorney to represent its subrogation interest.[1]

Shortly before the trial date of September 10, 1975, the parties began settlement

---

1. Minn.St. 176.061, subd. 5, provides for the employer's right of subrogation as well as setting forth other basic rights of the parties in this situation: "Where an injury or death for which compensation is payable is caused under circumstances which created a legal liability for damages on the part of a party other than the employer, that party being then insured or self-insured in accordance with this chapter, and the provisions of subdivisions 1, 2, 3 and 4 do not apply, or the party other than the employer is not then insured or self-insured as provided by this chapter, legal proceedings may be taken by the employee or his dependents against the other party to recover damages, notwithstanding the payment by the employer or his liability to pay compensation. If the action against such other party is brought by the injured employee or his dependents and a judgment is obtained and paid or settlement is made with the other party, the employer may deduct from the compensation payable by him the amount actually received by the employee or dependents in accordance with subdivision 6. If the action is not diligently prosecuted or if the court deems it advisable in order to protect the interests of the employer, upon ap-plication the court may grant the employer the right to intervene in any such action for the prosecution thereof. If the injured employee or his dependents agree to receive compensation from the employer or institute proceedings to recover the same or accept from the employer any payment on account of such compensation, the employer is subrogated to the rights of the employee or his dependents. This employer may maintain an action or continue an action already instituted. This action may be maintained in the name of the employee or the names of the dependents or in the name of the employer against such other party for the recovery of damages. If the action is not diligently prosecuted by the employer or the court deems it advisable in order to protect the interest of the employee, the court, upon application, may grant to the employee or his dependents the right to intervene in the action for the prosecution thereof. The proceeds of such action or settlement thereof shall be paid in accordance with subdivision 6. Such party is not liable to any person other than the employee or his dependents for any damages resulting from the injury or death."

negotiations. On September 8, relator's attorney sent a letter to the compensation insurer, withdrawing his representation because a conflict of interest had arisen during the negotiations. As stated in relator's brief:

"* * * At that time and during the following days, several telephone conversations occurred between Richard C. Smith, who represented the employee and George R. Benton, who represented the compensation insurer. Through its attorney, the compensation insurer was put on notice that the employee intended to negotiate a settlement which would not include any items for which the insurer might have a subrogation claim under the Workers' Compensation statute."

Apparently relator had received a settlement offer acceptable to him, but unacceptable to the compensation insurer. On September 11, the parties to the tort action read a stipulation of settlement into the record of the Hennepin County District Court. Neither the employer nor compensation insurer was present or a party to the settlement, although they were aware that they were no longer represented by relator's attorney. Relator and his wife received $18,000 for, in the words of relator's counsel, "pain and suffering, the loss of consortium of Mr. Naig and of Mrs. Naig, the embarrassment, humiliation that has occurred because of the loss to this man of his earning ability, financial problems in the home, the scars that are on his body, and the general disability as opposed to his prior situation." Plaintiffs signed a general release and the tort action was dismissed with prejudice, pursuant to stipulation. The parties agreed that the settlement "encompasse[d] everything other than the subrogated interest of the compensation carrier."

On October 24, 1975, the employer and compensation insurer filed a petition with the Worker's Compensation Division for an order that would allocate the proceeds of relator's third-party settlement. Relator objected to the petition and the employer withheld benefit payments, prompting relator to file a claim petition. The matter came before a compensation judge who issued an order allocating $7,538.80[2] of the settlement as a credit against claims by relator for compensation and medical expenses under the Worker's Compensation Act. Relator appealed to the Worker's Compensation Court of Appeals, which sustained the order except insofar as it provided a credit against medical expenses.

This case presents us with another opportunity to examine the confusing and difficult relationships among employers, employees, and third-party tortfeasors under the Worker's Compensation Act. The question presented here is whether an employer may credit against compensation payments that portion of a settlement between an employee and third-party tortfeasor which compensates the employee for damages which are not cognizable under the Worker's Compensation Act.

■ The employer and its compensation insurer were subrogated to relator's rights against the third-party tortfeasors because compensation benefits had been accepted by relator. Minn.St. 176.061, subd. 5 (quoted in footnote 1, *supra*). Even so, relator could settle his tort claims without the employer's consent, but such settlement could not affect the employer's subrogation rights. *Lang v. William Bros Boiler & Mfg. Co.*, 250 Minn. 521, 531, 85 N.W.2d 412, 419 (1957). More pertinently, we noted in *Liberty Mut. Ins. Co. v. Nutting Truck & Caster Co.*, 295 Minn. 211, 216, 203 N.W.2d 542, 545 (1973):

"* * * [W]hen an employee has received workmen's compensation and then commences an action against a third party, *the employee has a right to dispose of his claim for bodily injuries against the third party by excluding from the settlement any amounts due his employer and insurer by way of subrogation.* The employee can make this type of separate

**2.** This figure represents the settlement proceeds ($18,000) less collection costs ($6,691.80) and one-third of the net recovery ($3,769.40) to be paid relator. Minn.St. 176.061, subd. 6, quoted in footnote 3, *infra.*

settlement, but such a settlement does not affect the rights of the employer or the workmen's compensation carrier to continue its statutory subrogation action against the third-party tortfeasor * *." (Italics supplied.)

When an impasse with his employer was reached, relator endeavored to compromise only those claims not recompensed by worker's compensation, i. e., items of recovery not subject to his employer's subrogation rights.

■ The employer and its insurer nevertheless suggest that part of the settlement must be credited against compensation payments according to the schedule set forth in Minn.St. 176.061, subd. 6.[3] We disagree. If an employee settles only those claims not subject to subrogation by the employer, the employer in no way is prejudiced by the settlement. It possesses not only the right to intervene in the employee's suit but also the right to maintain actions in its own name to enforce its subrogation rights and recover expenses for medical treatment. Minn.St. 176.061, subds. 5, 7. Crediting part of such a settlement to the employer effectively precludes the employee from seeking a settlement of his own claims. So long as the employer is notified of negotiations leading to such a settlement so that it can appear or intervene to protect its interest[4] and so long as the employee demonstrates that the settlement concerns only damages not recoverable under worker's compensation, or allocates the settlement into recoverable and nonrecoverable claims, the employer cannot credit the nonrecoverable portion of the settlement against compensation payments. By pursuing this course, however, the employee waives his statutory right to one-third of the employer's net recovery from the third-party. See Minn.St. 176.061, subd. 6(b) (quoted in footnote 3, *supra*).

In this case, the Court of Appeals found the settlement agreement ambiguous as to whether it compromised items recoverable under worker's compensation. It therefore ordered that the recovery be credited according to Minn.St. 176.061, subd. 6, with one reservation. Because it was evident the settlement included no payment for medical treatment, the Court of Appeals held that the employer could not credit the proceeds against medical expenses.

■ Although we agree with the holding that the settlement cannot be credited against medical expenses, we cannot affirm crediting the proceeds against compensation payments. The language of the settlement agreement as related by counsel was ambiguous, and indeed might have settled claims for items also compensable by worker's compensation, but counsel for the third-party tortfeasors admitted that no interest to which the employer was subrogated was

---

**3.** Minn.St. 176.061, subd. 6, provides: "The proceeds of all actions for damages or settlement thereof under this section, received by the injured employee or his dependents or by the employer as provided by subdivision 5, shall be divided as follows:

"(a) After deducting the reasonable cost of collection, including but not limited to attorneys fees and burial expense *in excess of the statutory liability*, then

"(b) One-third of the remainder shall in any event be paid to the injured employee or his dependents, without being subject to any right of subrogation.

"(c) Out of the balance remaining, the employer shall be reimbursed in an amount equal to all compensation paid under this chapter to the employee or his dependents by the employer less the product of the costs deducted under clause (a) divided by the total proceeds received by the employee or his dependents from the other party multiplied by all compensation paid by the employer to the employee or his dependents.

"(d) Any balance remaining shall be paid to the employee or his dependents, and shall be a credit to employer for any compensation which employer is obligated to pay, but has not paid, and for any compensation that such employer shall be obligated to make in the future.

"There shall be no reimbursement or credit to employer for interest or penalties."

*Hladek v. John A. Dalsin & Son,* Minn., 245 N.W.2d 593 (1976), indicates that this schedule is not as exhaustive as it might first appear. There, we held that where an employer is a party to a settlement agreement and fails to express its desire for credit, the settlement agreement governs disposition of the proceeds.

**4.** The fact of notice distinguishes *Modjeski v. Federal Bakery of Winona, Inc.,* 307 Minn. 432, 240 N.W.2d 542 (1976).

encompassed by the settlement. For example, payments related to loss of earnings, financial problems of the home, scars and general disability, pain and suffering are all items which might be related to claims for worker's compensation. However, a jury would not be limited by the worker's compensation laws and with the admission by the third party that the employee was not being compensated for items of worker's compensation, any payment made was obviously intended to be for the excess over and above any worker's compensation claims. The admission by the third-party tortfeasor that the settlement encompassed everything other than the subrogated interest of the compensation carrier should estop that party from contending the contrary in a suit brought by the employer. Consequently, the employer was in no way prejudiced by the settlement and it retained its subrogation rights unencumbered. Enforcement of those rights through intervention or initiation of suit is a matter left to the discretion of the employer if it receives notice of settlement negotiations. The employer cannot by its inaction compel the employee to enforce its rights, unless the employee prejudices those rights. We hold that no part of the settlement proceeds can be credited against the employer's obligations under the act.

Relator is awarded attorneys fees of $400.

Affirmed in part and reversed in part.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.