**Charles EASTERLIN, Relator,**

v.

**STATE of Minnesota, University of Minnesota, self-insured, Respondent.**

No. CX–82–897.

Supreme Court of Minnesota.

March 4, 1983.

Friedman, Nord & Paulson, Duluth, for relator.

Hubert H. Humphrey, III, Atty. Gen., Jennifer Patterson, St. Paul, for respondent.

SIMONETT, Justice.

This appeal raises the question of what are the consequences of the failure of an employee to give notice to his employer that the employee's tort claim against a third-party tortfeasor is being settled under a *Naig* release. A divided Workers' Compensation Court of Appeals held that no proper notice of the pending settlement negotiations was given to the employer and that failure to give notice subjected the employee's settlement recovery to the employer's claim for a credit against future compensation benefits. We affirm.

Relator Charles Easterlin, in the course of his employment for respondent State of Minnesota, University of Minnesota, Duluth (State), was injured on July 13, 1979, in a motor vehicle accident. The State, which is self-insured, paid Easterlin temporary total disability.

On December 4, 1979, the State Claims Section wrote Easterlin requesting information about the motor vehicle accident and advising that the State of Minnesota may be entitled to a credit for any sums received in a third-party-action. On December 18, Easterlin's counsel responded:

> As the attorney who will be representing him in the accident which occurred, the names of the other parties are Roger Borowicz and Michele Borowicz. The name of their insurer we don't have as yet. So far, Mr. Easterlin is under treatment and for the present we will not be filing suit until we can determine what the amount of the claim should be. We will keep you informed of any positive results.

Thereafter, the employee's counsel without again reporting to the State, commenced a lawsuit against Borowicz and, on October 29, 1980, settled with defendants and their insurer under a release stated to be made "in reliance upon *Naig v. Bloomington Sanitation,* 258 N.W.2d 891 (1977)." Employee Easterlin settled for all damage claims not covered under the Workers' Compensation Act for the sum of $6,000, with the parties expressly acknowledging that the settlement did not affect the "subrogation interests" of the plaintiff's workers' compensation insurer. Easterlin also expressly waived his share in any recovery which his compensation insurer might obtain pursuant to its subrogation rights. On October 31, 1980, copies of the settlement agreement were sent to the State Claims Section and to the University.

Some months later, in March 1981, the employee filed a claim petition for permanent partial disability of the back and left hand, and at that time the University sought allocation of the $6,000 settlement proceeds pursuant to Minn.Stat. § 176.061, subd. 6 (1982). The employee objected, and this issue was tried together with the permanent partial disability claim before the compensation judge. The compensation judge ruled that the tort settlement was not subject to the employer's credit rights, reasoning that the settlement had covered only damages not cognizable under the Workers' Compensation Act, that the employer still retained its right to bring an independent action against the tortfeasors for its subrogation interests, and that the employer had received sufficient notice of the settlement by the attorney's letter of December 18, 1979.

On appeal to the Workers' Compensation Court of Appeals, a majority of the court reversed the compensation judge, deciding that the employer had not received adequate notice of the settlement negotiations as required by *Naig* and that the settlement proceeds were subject to the employer's claim credit under section 176.061. The majority further held that the State was not guilty of laches. One judge dissented, agreeing with the compensation judge's ruling, and a second judge dissented on the grounds that notice of settlement negotiations was not required because the employer's subrogation rights were unaffected by the third party settlement and that, even if the employer had received notice, it could not have prevented the settlement that was made.

In *Naig* we held:

> So long as the employer is notified of negotiations leading to such a settlement so that it can appear or intervene to protect its interest and so long as the employee demonstrates that the settlement concerns only damages not recoverable under worker's compensation, or allocates the settlement into recoverable and nonrecoverable claims, the employer cannot credit the nonrecoverable portion of the settlement against compensation payments.

*Naig v. Bloomington Sanitation,* 258 N.W.2d 891 at 894 (Minn.1977) (footnote omitted).

So the issues presented are: (1) Was sufficient notice of the settlement negotiations given by the employee to the employer-self-insured? (2) If not, was notice waived by the employer? (3) If not waived, then does lack of notice entitle the employer to claim a credit for future benefits against the settlement fund?

█ 1. The employee claims that his counsel's letter of December 18, 1979, to the State Claims Section was sufficient notice of the settlement negotiations. We disagree. The December 18th letter only names the third parties, does not name their insurer, says a lawsuit is not then being filed, says nothing about any settlement negotiations, and concludes with "[w]e will keep you informed of any positive results." This letter falls far short of notifying the employer of "negotiations leading to settlement so that it can appear or intervene to protect its interests." We affirm the holding of the majority of the Court of Appeals that notice of the *Naig* settlement was insufficient.

2. The employee next contends that the employer, by doing nothing after receiving counsel's letter of December 18, 1979, has either waived notice or is barred by laches from asserting lack of notice. There is no merit to this argument. Nothing in the letter required the State to take any action; indeed, if anything, the letter impliedly suggests that the State might wait until it heard further from the employee's counsel. When the State next received word from counsel, it was to be informed that a settlement had already taken place. Within 5 months after receiving notice of the settlement, the employer asserted its right to a credit for future benefits. We affirm the Court of Appeals' holding that there was no waiver or laches.

█ 3. Lastly, the employee contends, in effect, that notice of settlement negotiations is not necessary in a *Naig* settlement because the settlement does not affect the employer's rights. We disagree.

The employee argues that it is unfair that his $6,000 recovery for items of damages not covered by workers' compensation be reduced by subjecting it to the employer's credit claim, especially since the employer is left free to proceed against the third party tortfeasor for any loss it has sustained. The employee points out, too, that if he is permitted to keep his recovery with no part of it credited to the employer's liability, he is not being unjustly enriched.

The employee's argument, however, ignores the plain holding of *Naig* that an employer is entitled to notice of pending settlement negotiations, and that absent such notice the employer-insurer, who is not privy to the settlement, is entitled to a credit for future benefits paid against the settlement recovery of the employee or his or her representative. Since the employer in *Naig* did receive notice of the settlement negotiations, we held that it was *not* entitled to a credit for future benefits paid against the employee's settlement recovery. Thus *Naig* is distinguishable from *Modjeski v. Federal Bakery of Winona, Inc.,* 307 Minn. 432, 240 N.W.2d 542 (1976), where we held that the employer *was* entitled to a credit for future benefits where the employer did not receive notice, even though the settlement by its terms excluded the employer's subrogation rights.

It is true that in *Naig* we said, "If an employee settles only those claims not subject to subrogation by the employer, the employer in no way is prejudiced by the settlement." 258 N.W.2d at 894. Nevertheless, at the same time we went on to say that notice of the settlement negotiations must be given to the employer. In a recent decision, *Great American Insurance Co. v. Spoden,* 316 N.W.2d 740, 742 n. 5 (Minn. 1982), we again stressed the importance of the *Naig* notice, saying, "This court will not allow a right of participation to be defeated by negotiations between the employee and the third-party tortfeasor to which the subrogated carrier is not privy." 316 N.W.2d at 742 n. 5. *See also Nelson v. State, Department of Natural Resources,* 305 N.W.2d 317, 319 (Minn.1981) (speaks of the "critical nature of notice in cases involving pending settlements").

When we said in *Naig* that the employer is not prejudiced by the employee's settlement, we were referring to the fact that the employer retains its subrogation rights and in that sense is not prejudiced. We should have noted, however, that prejudice may nevertheless occur when the employer seeks to enforce those rights. It is for that reason, as well as to encourage complete

rather than piecemeal settlements, that we require notice. To understand why this is so, we need to look more closely at the effect of a *Naig* settlement.

For instance, if, in the absence of a *Naig* settlement, the employer-insurer sues the third-party tortfeasor, the employer-insurer recovers in the name of the employee, all of the employee's damages. That recovery would then be distributed (as would a recovery where the employee, rather than the employer, maintains the suit) according to Minn.Stat. § 176.061, subd. 6 (1982), as follows: (1) a sum for attorney fees, probably one-third; (2) one-third of the remainder free and clear to the employee; (3) a sum to reimburse the employer for all compensation paid less a pro rata share of the attorney fees; and (4) any balance remaining to the employee, subject to a credit to the employer for benefits yet to be paid.

If, instead, the employee settles with the third-party tortfeasor on a *Naig* release, what is left for the employer? The answer to this question presents a number of theoretical and practical problems. Precisely how the employer's subrogation suit against the tortfeasor is to be presented to a jury is not before us now, but this much is clear: in presenting its subrogation claim, the employer will require the assistance of the employee and will have to prove to the satisfaction of a jury not only the liability of the tortfeasor but the nature and extent of the employee's disability. An added complication may arise if at the same time the employer is proving the employee's disability claim against the tortfeasor the employee is asserting a claim for further disability compensation benefits against the employer.

It is enough for our purposes here to note that an employer, although left with its subrogation claim intact, has an assortment of problems in presenting that claim. Thus it is important for the employer, if the employee has already commenced suit, to be able to appear therein or to exercise its statutory right to intervene. Furthermore, the employer should not be denied whatever tactical advantage there might be in attempting to settle its subrogation claim at the same time the employee is settling his claim for non-workers' compensation damages. It may be that the employer will not be able to settle its claim, but it should not be deprived of the opportune time to try. What is important, too, from the standpoint of the administration of justice, is that every reasonable effort be made to avoid a multiplicity of lawsuits. Giving the employer notice of pending settlement negotiations, hardly an onerous chore, furthers this policy.

■ We adhere, therefore, to our *Naig* holding. We hold that notice of settlement negotiations for a *Naig* settlement must be given to the employer-insurer in a manner and at a time such that the employer-insurer has a reasonable opportunity to participate in the negotiations and to appear or intervene in any litigation to protect its interests. We further hold that lack of notice is presumptively prejudicial to the employer, and, if the presumption is not rebutted by the employee, the employer is entitled to a credit for future compensation payable against the employee's *Naig* settlement recovery.

In this case the employee had commenced an action against the tortfeasors, so that the lack of notice deprived the employer not only of a settlement opportunity, but of an opportunity to intervene and continue the suit. The State is asserting only a claim of credit for future benefits payable. No justification has been given for not giving notice of the pending negotiations. Neither has the employee presented any proof that the lack of notice was not prejudicial to the employer. Consequently, we affirm the decision of the Court of Appeals.

*Affirmed.*

YETKA, J., took no part in the consideration or decision of this case.