James J. RUDDY, et al., Appellants,

v.

FORD MOTOR COMPANY,
Respondent,

v.

NORTHWESTERN NATIONAL INSUR-
ANCE COMPANY, et al., intervenors,
Respondents.

No. C1–86–1249.

Court of Appeals of Minnesota.

Jan. 27, 1987.

Review Denied March 25, 1987.

Robert C. Bell, Peterson, Bell, Converse & Jensen, St. Paul, for appellants.

Wayne D. Struble, Bowman & Brooke, Minneapolis, for respondent.

Charles E. Gillin, Mary A. Rice, Jardine, Logan & O'Brien, St. Paul, for respondents Northwestern Nat. Ins. Co., et al.

Heard, considered and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ.

## OPINION

FOLEY, Judge.

This appeal is from a partial final judgment in favor of intervenors/respondents Hertz-Penske and Northwestern National Insurance Company. Judgment in the amount of $16,738.83 was entered against appellants James J. Ruddy and his wife Lena L. Ruddy following the trial court's determination that "there is no just reason for delay." Minn.R.Civ.P. 54.02. We affirm in part, reverse in part and remand.

## FACTS

The relevant facts are not in dispute. James Ruddy was injured in March 1983 during the course and scope of his employment with Hertz-Penske. Since the accident, Hertz-Penske and its compensation carrier, Northwestern National, have paid him $25,935.14 in worker's compensation benefits.

In September 1984, the Ruddys commenced this product liability action against respondent Ford Motor Company, alleging defective design and manufacture of the Ford truck driven by James Ruddy at the time of the accident. Hertz-Penske and Northwestern National (hereinafter employer-insurer) were served with a copy of the summons and complaint. Employer-insurer gave both the Ruddys and Ford notice of its subrogation interest, and the Ruddys agreed to notify employer-insurer of any settlement negotiations.

Trial was scheduled for January 1986. Ford's attorney claims that settlement was first discussed on December 19, 1985. The Ruddys' attorney acknowledges that "*serious* settlement negotiations" had not taken place as of December 23, 1985. (Emphasis supplied.) Ford's attorney claims, however, that "substantial progress" toward settlement was made on Friday, January 3, 1986 and that the Ruddys' attorney assured him at that time that employer-insurer had been informed of these negotiations. On that same day, the Ruddys' attorney contacted employer-insurer and advised it that a *Naig* type settlement would soon be entered with Ford. During this conversation, employer-insurer was also first advised of the scheduled trial date.

Three days later on Monday, January 6, the Ruddys and Ford orally reached a settlement. The settlement and *Naig* release were executed on January 17 and specifically provided:

All the parties to this Settlement Agreement and Naig Release understand and agree that James J. Ruddy is releasing only that part or portion of his claim or cause of action which is not compensable or cognizable under the Minnesota workers' compensation laws pursuant to the Minnesota Supreme Court's decision in *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977).

A stipulation dismissing the action was entered into by the attorneys on January 22.

Prior to the filing of that stipulation, however, employer-insurer personally served and filed a motion for intervention and for allocation of the settlement proceeds, contending that it had not received reasonable notice of the settlement negotiations, had not been given an opportunity to participate and was not privy to those negotiations. Following a hearing, the trial court issued findings of fact, conclusions of law, and an order granting leave to intervene based on the record before it. Employer-insurer thereafter moved for allocation of the settlement proceeds. Prior to a hearing on this motion, the Ruddys filed a petition for a writ of prohibition, which was denied by this court on April 22, 1986.

A second hearing was held and an order was issued allocating the settlement proceeds. Partial judgment was entered against the Ruddys in the amount of $16,738.83. This appeal followed.[1]

## ISSUES

1. Did the trial court err in finding that notice of the *Naig* settlement was insufficient as a matter of law?

2. Did the trial court err in ordering that the proceeds of a *Naig* settlement be allocated pursuant to Minn.Stat. § 176.061 (1984)?

## ANALYSIS

### I

In *Easterlin v. State*, 330 N.W.2d 704 (Minn.1983), the supreme court held that an employee is required to give his employer notice of pending negotiations for a settlement under *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977), in a manner and at a time so that the employer has a reasonable opportunity to participate in the negotiations and to appear or intervene in any litigation to protect its interests. *Easterlin*, 330 N.W.2d at 708. Lack of such notice is presumptively prejudicial to the employer's exercise of its subrogation rights.[2] *Id.*

Although the Ruddys do not attempt to rebut this presumption, they do contend that the trial court erred in finding that "neither adequate notice of settlement negotiations nor reasonable opportunity to participate in negotiations was provided" to employer-insurer. They insist that such a finding could not be made based on the record and that they are entitled to a trial on the issue. We disagree. The facts surrounding the settlement negotiations are relatively undisputed and the trial court could properly rule that notice of the *Naig* settlement was insufficient as a matter of law. *See Del Hayes & Sons, Inc. v. Mitch-*

---

1. Ford has indicated that it will not participate in this appeal and did not file a brief.

2. Although an employer retains its subrogation rights and is not prejudiced in this sense by an employee's *Naig* settlement, prejudice may nevertheless occur when the employer attempts to enforce those rights. In *Easterlin*, the supreme court recognized that in any subrogation action against a third-party tortfeasor, the employee's assistance will be required and that it is [thus] important for the employer, if the employee has already commenced suit, to be able to appear therein or to exercise its statutory right to intervene. Furthermore, the employer should not be denied whatever tactical advantage there might be in attempting to settle its subrogation claim at the same time the employee is settling his claim for nonworkers' compensation damages. It may be that the employer will not be able to settle its claim, but it should not be deprived of the opportune time to try. What is important, too, from the standpoint of the administration of justice, is that every reasonable effort be made to avoid a multiplicity of lawsuits. Giving the employer notice of pending settlement negotiations, hardly an onerous chore, furthers this policy. *Id.* at 708.

*ell,* 304 Minn. 275, 230 N.W.2d 588 (1975) (court has inherent power to enter summary judgment on its own motion when there remains no genuine issue of material fact and where one party is entitled to judgment as a matter of law).

Examination of the record establishes that soon after commencement of the suit against Ford in the fall of 1984, the Ruddys agreed to keep employer-insurer informed of any settlement negotiations. Nevertheless, employer-insurer did not receive notice of the scheduled trial date, nor did it receive notice when settlement negotiations began in mid to late December 1985. Employer-insurer was first contacted regarding a possible *Naig* settlement and informed that a trial date had been scheduled on Friday, January 3, 1986, only three days before the settlement was orally reached. The Ruddys do not dispute these basic facts. Given this evidence, it is clear that employer-insurer was not given *reasonable* notice of the pending settlement nor an opportunity to participate in the negotiations in a manner necessary to protect its interests.

## II

Once the trial court determined that notice of the *Naig* settlement was insufficient, it ordered that the settlement proceeds be statutorily allocated. Judgment was thereafter entered against the Ruddys in the amount of $16,738.83. Employer-insurer asserts that this allocation was proper and that it is entitled to reimbursement of the compensation benefits it has already paid.

By its nature, however, *Naig* type settlements deal only with an employee's rights against the tortfeasor which are not compensable by worker's compensation. Such settlements do not preclude an employer from exercising its subrogation rights. The employer "possesses not only the right to intervene in the employee's suit but also the right to maintain actions in its own name to enforce its subrogation rights and recover expenses for medical treatment." *Naig,* 258 N.W.2d at 894.

However, when an employee settles with a third party tortfeasor without giving sufficient notice to his employer, the employer is entitled to a *credit* for future benefits payable in addition to its right to bring an action against the third party based on its subrogation claim. Thus, the employer-insurer in this case is entitled to a *credit* "for future compensation payable against the [Ruddys'] *Naig* settlement recovery." *Easterlin,* 330 N.W.2d at 708.

Statutory allocation under Minn. Stat. § 176.061, subd. 6 (1984) is limited to those proceeds in which the employer has a subrogation interest and does not apply to the proceeds of a settlement attributable to damages not recoverable under workers' compensation. *Henning v. Wineman,* 306 N.W.2d 550, 552 (Minn.1981) (citing *Naig,* 258 N.W.2d 891). Because employer-insurer in this case does not have a subrogation interest in the proceeds of the *Naig* settlement received by the Ruddys, those proceeds are not subject to allocation but only to a credit for future benefits payable.

The judgment against the Ruddys is therefore vacated, and the matter is remanded to the trial court for calculation of the credit to which employer-insurer is entitled. On remand, employer-insurer, as intervenor, may continue the action against Ford on its subrogation claim.[3]

### DECISION

Affirmed in part, reversed in part and remanded.

---

3. The Ruddys also challenged the judgment on the ground that intervention was not proper because employer-insurer failed to file or serve a proposed pleading as required by Minn.R. Civ.P. 24.03. Given our determination that the judgment must be vacated, we decline to discuss this issue other than to note that an amended complaint will likely be necessary should employer-insurer continue in its subrogation claim against Ford.