**Ray Kenneth GULLICKSON, et al., Plaintiffs,**

v.

**LUTSEN RESORT, INC., Defendant and Third-Party Plaintiff, Respondent,**

v.

**SUPERIOR CRAFTS, INC., Third-Party Defendant, Respondent,**

**Investors Diversified Services, et al., Intervenors, Appellants.**

**No. C0-91-513.**

Court of Appeals of Minnesota.

Aug. 27, 1991.

Review Denied Oct. 23, 1991.

Thomas R. Thibodeau, Faye M. Witt, Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for Lutsen Resort, Inc.

Eric J. Magnuson, Brian A. Wood, Yvette D. Ansel, Rider, Bennett, Egan & Arundel, Minneapolis, for Superior Crafts, Inc.

Mark C. McCullough, Rex L. Buxton, Skaar & McCullough, Minneapolis, for Investors Diversified Services, et al.

Considered and decided by PETERSON, P.J., and FOLEY and KALITOWSKI, JJ.

## OPINION

FOLEY, Judge.

Investors Diversified Services, Inc. and Travelers Insurance Company appeal from an order denying their motion to reinstate a suit initiated by an IDS employee against respondents Lutsen Resort, Inc. and Superior Crafts, Inc. We reverse and remand.

## FACTS

The facts are not in dispute. Ray Kenneth Gullickson seriously injured his back in 1982 while attending a seminar at Lutsen when a swing made by Superior Crafts collapsed. Gullickson sued Lutsen on June 9, 1986, and Lutsen sued Superior Crafts as a third party defendant. Gullickson's employer, IDS, and its workers' compensation carrier, Travelers, (hereafter IDS) intervened to protect their subrogation claim on December 3, 1986. Gullickson's action and IDS' action were brought before the statute of limitation had run on Gullickson's claim.

On March 16, 1989, after the statute of limitations had run, IDS voluntarily dismissed its claim without prejudice in order to "simplify the issues at trial." IDS did not file a stipulation for dismissal, and there is no order dismissing IDS. However, IDS informed all parties that it expected the trial court to account for its subrogation interest pursuant to Minn.Stat. § 176.061, subd. 6 (1988), which provides that workers' compensation benefits be subtracted from a damage award. Gullickson's action never reached a jury.

On March 28, 1989, one day after trial began but prior to any verdict, Gullickson settled all claims except for workers' compensation benefits with Lutsen and Superi-

or Crafts. This is commonly known as a "Naig" settlement. *See Naig v. Bloomington Sanitation*, 258 N.W.2d 891, 893 (Minn.1977) (subrogation claim survives employee's settlement with tortfeasor).

Upon learning of the settlement, counsel for IDS wrote to opposing counsel requesting that the

> Stipulation of Dismissal which is prepared in this matter[ ] reflect[ ] that all claims are dismissed except the Workers' Compensation Subrogation claim[ ] of IDS * * *.

> I do not want there to be any future misunderstandings on the dismissal.

> Furthermore, I intend to serve this matter in the name of IDS * * * against the defendants in the above action.

The settlement agreement executed on April 12, 1989 expressly preserved IDS' subrogation rights. However, the stipulation and order for dismissal with prejudice, which did not list IDS as a party in the caption, makes no mention of IDS or any reservation of IDS' claim.

In December 1989, Gullickson settled his workers' compensation claim with IDS. In February 1991, almost two years after the dismissal and nearly three years after the statute of limitations on Gullickson's claim had run, IDS moved the trial court to reinstate the matter in order to recover workers' compensation benefits paid to Gullickson from Lutsen and Superior Crafts.

IDS argued the dismissal was conditional and the statute of limitation was tolled because Gullickson timely filed the action. Lutsen and Superior Crafts submitted the affidavits of their counsel stating that during the settlement negotiations with Gullickson in March 1989, counsel for IDS repeatedly advised opposing counsel that IDS would remain dismissed from the action and would not proceed with any further claim. IDS submitted an affidavit of its counsel in response, stating that IDS clearly indicated its intention to pursue its subrogation claim and that the dismissal was merely for the convenience of the parties trying the case. Correspondence in the record supports this view.

The trial court denied IDS' motion to reinstate the action. The trial court held that, while IDS joined the case within the statute of limitations, the limitation barred the revival of their claim following IDS' voluntarily dismissal after the limitation had run. The trial court noted that despite IDS' suggestion, nothing in the record supported the proposition that the dismissal was conditional or limited. The trial court also noted that IDS' motives for dismissal did not affect the running of the statute of limitation.

## ISSUE

Where a subrogation claimant joins an action brought within the statute of limitation, and voluntarily dismisses its action without prejudice after the limitation has run, may the subrogation claimant reinitiate its claim after the underlying action is dismissed?

## ANALYSIS

■ The interpretation of the relationship among subrogation claims, underlying tort claims, and the applicable statute of limitation presents a question of law. This court is not bound by the conclusions of a trial court when reviewing issues of law. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

■ IDS argues the trial court erred when it held that IDS' subrogation claim was barred by the six-year statute of limitations provided by Minn.Stat. 541.05, subd. 1(5) (1990). There is no dispute the six-year limitation applies and the statute ran in 1988. IDS argues that its 1991 subrogation action relates back to the timely tort action brought by its employee in 1986. Lutsen and Superior Crafts argue that although IDS' initial action was timely, their voluntary dismissal of that action in 1989 foreclosed IDS' right to reinitiate its claim after the limitation had run.

The resolution of this dispute depends on the interpretation of *Liberty Mut. Ins. Co. v. Nutting Truck & Caster Co.*, 295 Minn. 211, 203 N.W.2d 542 (1973). In *Nutting*, an injured employee sued the alleged tort-

feasor within the limitation period. The workers' compensation carrier joined the suit to protect its subrogation claim after the limitation had run. The employee then settled all claims except the workers' compensation claim, and his action against the tortfeasor was dismissed. The trial court simultaneously dismissed the subrogation claim because the subrogation claimant was joined after the limitation had run on the underlaying claim.

The subrogation claimant then sued the tortfeasor independently. The trial court first allowed the subrogation claimant to proceed, then dismissed the portion of the claim for lost wages, allowing only the medical payment claim to proceed. The subrogation claimant appealed to pursue its lost wage claim as well.

The Minnesota Supreme Court held that the statute of limitation did not bar the subrogation claim because the original underlying tort action brought by the employee was timely. The supreme court reasoned that once an employee receives workers' compensation benefits, his or her employer is subrogated to his or her rights against the tortfeasor. Thus, when an employee brings an action against a tortfeasor, he or she is suing not only on his behalf but on behalf of his or her employer as well. Therefore, where the employee sues to recover for his or her personal injury within the limitation period, his or her employer's subrogated workers' compensation claims are also timely, *even if the employer is joined after the limitation runs. Id.* 203 N.W.2d at 544.

The parties in this case do not dispute the general rule set forth in *Nutting.* The question is whether the *Nutting* rule will revive a timely-initiated subrogation claim that was voluntarily dismissed without prejudice and then reinitiated after the employee had settled and after the limitation had run. IDS argues the carrier's claims in *Nutting* were dismissed and then reinstated in a manner indistinguishable from the voluntary dismissal in this case. Lutsen and Superior Crafts argue that voluntary dismissal of subrogation claims automatically ends any tolling period provided

by *Nutting*, citing *American Mut. Liability Ins. Co. v. Reed Cleaners*, 265 Minn. 503, 122 N.W.2d 178 (1963) and *DeMars v. Robinson King Floors, Inc.*, 256 N.W.2d 501 (Minn.1977).

In *Nutting* the supreme court allowed the claim to proceed despite the fact it had been dismissed after the limitation period had run. Although the supreme court clearly focused its attention on the untimely initiation of the subrogation claim, we cannot conclude with certainty that the tolling provision set forth in *Nutting* does not also apply to dismissal and reinstatement of a timely-initiated claim. The supreme court made no distinction between voluntary and involuntary dismissals preceding the attempted reinstatement of the claim. Any distinction may be without effect because in both instances claimants seek to reinstate a claim after the limitation period has run. The holdings in *Reed* and *DeMars* do not persuade us that *Nutting* does not apply.

Essentially, Lutsen and Superior Crafts urge this court to create a new rule of law based on the perceived inadequacy of the *Nutting* rule. They argue that indefinite tolling is against public policy. If *Nutting* does, in fact, provide an indefinite tolling period for subrogation claimants, Lutsen and Superior Crafts must seek relief from the Minnesota Supreme Court or the legislature. This court lacks the power to modify supreme court precedent or to engraft equitable restraints on a rule of law that may have unintended results. In the absence of a more clearly defined standard, this court must reverse the dismissal of IDS' claims. *See American Mut. Ins. Co. v. Honeywell, Inc.*, 422 N.W.2d 274 (Minn. App.1988), *pet. for rev. denied* (Minn. June 10, 1988).

### DECISION

The trial court erred in denying IDS' motion to reinstate the lawsuit after the limitation period has run because timely initiation of Gullickson's claim tolled the statute of limitation with respect to IDS.

Reversed and remanded.

PETERSON, Judge (dissenting).

I respectfully dissent. In *Liberty Mut. Ins. Co. v. Nutting Truck & Caster Co.*, 295 Minn. 211, 203 N.W.2d 542 (Minn.1972), the supreme court merely held that the untimely *initiation* of the carrier's claim was excused by the timely initiation of the employee's claim. The issue in this case concerns the effect of *terminating* a timely claim after the limitation period has run. *Nutting* does not hold that the timely initiation of an employee's claim excuses voluntary termination of the employer's claim after the limitation period has run. If this were so, then an employer could pursue a claim, or dismiss and reinitiate a claim 20 years after the limitation period as long as the employee's action was initiated within the limitation period.

This court appears to have allowed just such a result in *American Mut. Ins. Co. v. Honeywell, Inc.*, 422 N.W.2d 274 (Minn. App.1988), *pet. for rev. denied* (Minn. June 10, 1988). In *Honeywell* an employee sued and settled, excepting subrogation claims, before the limitation period ran. At least two years after the limitation passed, the worker's compensation carrier sued the tortfeasor to recover worker's compensation payments. This court held that under *Nutting*, the carrier's suit was timely because the employee's suit was timely. Presumably, the carrier could have sued 20 years after the limitation had run and still be saved by the employee's timely filing.

It is unlikely that *Nutting* was intended to have such an effect. *Nutting* revives only those subrogation claims that coexisted with the employee's claim, and then continued uninterrupted after the employee settled. Any break in the chain after the limitation period must be fatal or claims could be indefinitely extended, as provided in *Honeywell*. Such a result is clearly against public policy requiring reasonable diligence in bringing litigation to a close and prohibiting parties from delaying suits for an unreasonable length of time. *De-Mars v. Robinson King Floors, Inc.*, 256 N.W.2d 501, 504 (Minn.1977).

IDS argues that *Nutting* is not distinguishable because the carrier in *Nutting* was able to reinstate its claim following dismissal despite the fact that the limitation period had run. IDS contends that the dismissal and attempted reinitiation in this case are no different. I disagree, and I would hold that the differences are determinative. In *Nutting* the carrier's claim coexisted with the employee's claim and continued uninterrupted until the trial court ordered dismissal because the carrier's initial filing was untimely. The supreme court reversed, holding the the original filing was timely due to the employee's prompt action. Neither court considered the effect of refiling an initially timely claim following a voluntary dismissal after the limitation had run.

In this case, there is no dispute that IDS' initial claim was timely. Even if the claim was filed after the limitation had run, *Nutting* would serve to revive it. If the trial court had dismissed IDS' claim due to the untimeliness of the initial filing, *Nutting* would require reversal. The distinction between voluntary dismissal in this case and involuntary dismissal in *Nutting* is that IDS failed to preserve its claim after the limitation had run, while the claim in *Nutting* would have continued uninterrupted but for the trial court's dismissal. The dismissal in this case was occasioned by IDS' choice to discontinue its suit, not by the trial court's erroneous view that a carrier cannot join a timely action after the limitation has run.

Because *Nutting* does not directly apply, this case may be resolved by relying on other supreme court precedent. An employer can only assert a right equal to that asserted by its employee. As in *Nutting*, an employer's claim may be revived by the timely action of its employee. However, an employer cannot assert a right greater than that possessed by its employee. *American Mut. Liab. Ins. Co. v. Reed Cleaners*, 265 Minn. 503, 122 N.W.2d 178 (1963). Where the employee's claim would be barred because he voluntarily dismissed his claim after the limitation has run, *see DeMars*, 256 N.W.2d at 505, the employer's claim should also be barred.

I would affirm the trial court's order dismissing IDS' subrogation claim as barred by the statute of limitations. The timeliness of an employee's filing cannot revive an employer's claim once the employer voluntarily dismisses its claim after the limitation period has run.