Gerald McDONOUGH (C2–92–622),
James Wackerfuss (C4–92–623), Respondents,

v.

MUSKA ELECTRIC CO. and CNA Insurance Company, Relators,

HRI For PHP, Intervenor.

Nos. C2–92–622, C4–92–623.

Supreme Court of Minnesota.

July 24, 1992.

---

Mark A. Kleinschmidt, Cousineau, McGuire & Anderson, Minneapolis, for appellant.

Jeffrey S. Sheridan, Strandemo & Associates, Inver Grove Heights, for respondent.

COYNE, Justice.

This workers' compensation matter is before us on certiorari of Muska Electric Company and its workers' compensation liability insurer, CNA Insurance Company, to review a decision of the Workers' Compensation Court of Appeals reversing the compensation judge's dismissal of the claims made by Gerald McDonough and James Wackerfuss, both of whom had developed occupational asthma due to workplace exposure to toluene diisocyanate (TDI). We affirm.

The basic facts are not in dispute. McDonough and Wackerfuss were employed as electricians by Muska Electric Company. Pursuant to an agreement between Muska and Whirlpool Corporation, Muska electricians performed the electrical work at Whirlpool's Arcade Street plant in St. Paul, Minnesota. McDonough and Wackerfuss began working at this plant in 1973, and each was stationed there for more than 10 years.

The Whirlpool plant manufactured refrigeration appliances that were insulated with foam. The foam was made from a combination of liquid TDI and resin. Both McDonough and Wackerfuss were exposed to TDI while working at the Whirlpool plant, and both began experiencing intermittent respiratory problems some time after they started working there.

In February 1984 Wackerfuss' employment with Muska was terminated for reasons unrelated to his respiratory problems. McDonough remained at the Whirlpool plant until the spring of 1985 when the plant closed. Both men continued to experience some respiratory problems after leaving Whirlpool, and both were eventually diagnosed as suffering from TDI-induced asthma and bronchial hyperactivity.

In February 1985 McDonough filed a complaint in federal district court against Whirlpool and several chemical companies, claiming permanent injury to his respiratory system as a result of his work-place exposure to TDI. Wackerfuss was one of several plaintiffs in a similar action instituted against Whirlpool and others in 1984.[1] In late April 1989 both McDonough and Wackerfuss entered into *Naig*[2] settlements with Whirlpool. In August 1989 McDonough and Wackerfuss filed claims for medical and permanent partial disability benefits under the Minnesota Workers' Compensation Act. In addition to denying primary liability, Muska/CNA raised the limitation of actions defense.

Wackerfuss' and McDonough's claims were consolidated for hearing before a compensation judge who found (1) employees had not given Muska/CNA notice of settlement negotiations in their third-party

---

1. A portion of that lawsuit was previously before us in *Hildebrandt v. Whirlpool Corp.*, 364 N.W.2d 394 (Minn.1985).

2. *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977).

actions and (2) employees had sustained personal injuries arising out of and in the course of their employment at a time that Muska was insured for workers' compensation liability by CNA. The compensation judge made no permanency ratings, however, concluding employees' disabilities were not rateable under the applicable disability schedule. Finally, the compensation judge dismissed the claims, reasoning they were time barred because employees had not filed them within three years of their knowledge of the cause of their injuries.[3]

On appeal, the WCCA affirmed the primary liability determination but reversed the dismissal, concluding employees' claims were not time barred where employees' disabilities were not compensable prior to 1987 when this court decided *Moes v. City of St. Paul*, 402 N.W.2d 520 (Minn.1987). The WCCA also determined that employees' permanent impairments were capable of a rating within the disability schedules and that the lack of notice of settlement negotiations did not entitle Muska/CNA to a credit for future compensation against employees' *Naig* recoveries pursuant to *Easterlin v. State*, 330 N.W.2d 704 (Minn. 1983).

■■■ At the outset, we note Muska/CNA's objections to the WCCA's determinations that employees' claims are not barred and that they have rateable permanent impairments. We are satisfied the WCCA properly decided both issues. Where neither Wackerfuss nor McDonough had suffered a wage loss because of the progress of the occupational disease, neither had suffered a compensable disability as that term had been construed prior to *Moes*. As for the permanent impairment ratings, because employees' impairments were not included in the disability schedules, the WCCA assigned ratings within the "closest compensable category in the schedule." *Weber v. City of Inver Grove Heights*, 461 N.W.2d 918, 922 (Minn.1990).

The WCCA's ratings have ample support in the medical evidence.

■■■ The more difficult issue presented here concerns the obligation of an employee who has yet to claim workers' compensation benefits to notify the employer that a tort claim against a third party is being settled under a *Naig* release. In *Easterlin*, 330 N.W.2d at 708, we held that the employer must be notified of settlement negotiations:

> [N]otice of settlement negotiations for a *Naig* settlement must be given to the employer-insurer in a manner and at a time such that the employer-insurer has a reasonable opportunity to participate in the negotiations and to appear or intervene in any litigation to protect its interests. We further hold that lack of notice is presumptively prejudicial to the employer, and, if the presumption is not rebutted by the employee, the employer is entitled to a credit for future compensation payable against the employee's *Naig* settlement recovery.

Having been excluded from Wackerfuss' and McDonough's settlement negotiations with Whirlpool, Muska/CNA claimed an "*Easterlin* credit." In rejecting this claim, the WCCA determined either *Easterlin* was inapplicable or the presumption of prejudice had been rebutted.

The WCCA believed *Easterlin* inapplicable on the theory that where benefits were neither paid nor payable at the time of the settlement, Muska/CNA had no subrogation rights to protect. An employer's obligation to pay benefits, however, exists at the time of the work-related injury, regardless of negligence. *Allstate Ins. Co. v. Eagle–Picher Indus., Inc.*, 410 N.W.2d 324, 327–28 (Minn.1987). Thus, the subrogation rights also exist prior to commencement of a workers' compensation claim although most certainly there are practical difficulties in asserting a subrogation right before

---

**3.** Minn.Stat. § 176.151(4) (1990) provides:

In the case of injury caused by X-rays, radium, radioactive substances or machines, ionizing radiation, or any other occupational disease, the time limitations otherwise prescribed by Minnesota Statutes 1961, chapter 176, and acts amendatory thereof, shall not apply, but the employee shall give notice to the employer and commence an action within three years after the employee has knowledge of the cause of such injury and the injury has resulted in disability.

 

a worker seeks benefits. Nevertheless, in *Easterlin* we made it fairly clear that an employer ought not to be "deprived of the opportune time to try" to settle its subrogation claim; i.e., at the time employee is settling his claim against a third party for non-workers' compensation damages. 330 N.W.2d at 708. Accordingly, pursuant to *Easterlin*, it is incumbent on an employee to give his or her employer notice of pending *Naig* settlement negotiations regardless of whether a workers' compensation claim has been filed.

■ The WCCA also determined no credit was due Muska/CNA because any presumption of prejudice was rebutted. We agree. The primary function of the *Easterlin* notice is to afford the employer a "reasonable opportunity to participate in the negotiations and to appear or intervene in any litigation to protect its interests." 330 N.W.2d at 708. The secondary aim of the notice is "to encourage complete rather than piecemeal settlements." *Id.* at 707–08. In this case, although lack of notice arguably deprived Muska/CNA of a settlement opportunity, Muska/CNA was not deprived of an opportunity to intervene and continue the suit. Whirlpool's dismissal from the third-party action occurred some 14 months after the workers' compensation claims were filed. The record also fairly well reflects that had notice of a pending settlement with Whirlpool been given, Muska/CNA would not have entered into the settlement negotiations and would have limited its participation to seeking a waiver from its employees of any claim for workers' compensation.[4] From our review of the record, we conclude, as did the WCCA, any presumption of prejudice was rebutted. Consequently, we affirm the decision of the WCCA.

Affirmed.

**4.** In 1990, when Muska/CNA participated in the negotiations with the chemical companies, the third-party defendants asked Muska/CNA to enter into a "reverse-*Naig*" settlement involving three Muska electricians who had not filed workers' compensation claims. Counsel for Muska/CNA declined, indicating that in the absence of a current subrogation claim, his client was not a proper party. As an alternative, counsel for Muska/CNA proposed a settlement pursuant to which the three electricians would agree to waive future compensation claims. Other evidence negating prejudice included a commitment from the employees' counsel in the third-party action to provide Muska/CNA complete access to all discovery from that action and otherwise cooperate fully should Muska/CNA later elect to enforce its subrogation rights against Whirlpool.

Employees are awarded $400 in attorney fees.