Rollo E. JACKSON, et al., petitioners, Appellants,

v.

ZURICH AMERICAN INSURANCE COMPANY, Respondent.

No. C9–94–2050.

Supreme Court of Minnesota.

Jan. 26, 1996.

---

William D. Foster and Kristi J. Paulson, Minneapolis, for appellants.

James R. Waldhauser and Michael D. Barnett, Minneapolis, for respondent.

## OPINION

COYNE, Justice.

May an employee who sustains an injury arising out of and in the course of employment enter into an agreement with a third-party tortfeasor in full settlement of the employer's right of subrogation without the consent or over the objection of the employer or the workers' compensation insurer? We review a decision of the court of appeals affirming the dismissal of the plaintiffs' petition for a writ of mandamus directing the workers' compensation insurer to endorse the check issued pursuant to the plaintiffs' agreement with the third-party tortfeasor, made without the consent of the workers' compensation insurer and over its objection, and further directing the workers' compensation insurer to execute the release of its right of subroga-tion and the vacation of the alternative writ of mandamus. Concluding that the issue is governed by Minn.Stat. § 176.061, subd. 8a (1994), we affirm.

On September 1, 1992, Rollo Jackson, an employee of Howescale, sustained serious injuries compensable under the Workers' Compensation Act. Cottonwood Co-op Oil Company owned the property on which the accident occurred. Jackson walked through a door into an outbuilding in which there was a large, 6-foot deep hole, and he fell into it.[1] Howescale and its workers' compensation insurer, Zurich American Insurance Company, accepted liability and paid various workers' compensation benefits.

Jackson and his wife engaged a lawyer to bring a third-party action against Cottonwood. Although plaintiffs' counsel was advised in the spring of 1993 that Zurich had engaged a Minnesota law firm to represent it with respect to its subrogation interest, in January 1994 plaintiffs' counsel wrote directly to Zurich's office in Schaumburg, Illinois, to advise Zurich of

> pending settlement negotiations * * * pursuant to *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977), and *Easterlin v. State of Minnesota*, 330 N.W.2d 704 (Minn.1983).[2]

What has come to be known as a *Naig* settlement is an agreement between a work-injured employee and a third-party tortfeasor compromising only those damages that are not cognizable under the Workers' Compensation Act. *Naig*, 258 N.W.2d at 893. Because a claim for such damages is not subject to the employer's subrogation rights, the employee is required to notify the employer but need not obtain the employer's consent. *Id.* at 893–94. Despite the absence of any consent by Zurich, plaintiffs' counsel negotiated a $200,000 settlement with Cottonwood; that settlement was not a *Naig* settlement but included all claims against Cottonwood, including Zurich's subrogation

---

1. The plaintiffs allege that there was a sign on the door that said, "Keep Out—Big Hole," but Zurich contends that it is unclear whether the sign was on the door at the time of the accident, and if so, what it said.

2. The record does not reveal that this information was communicated to Zurich's counsel, who had asked to be kept informed of settlement negotiations.

interest. Consequently, Cottonwood's insurer issued its draft payable to plaintiffs and their lawyer and to Zurich. The draft was accompanied by a *Pierringer*[3] release which required execution by Zurich as well as the plaintiffs. Zurich declined to enter into a settlement which contemplated a payment of not more than 20 percent of the liability limit of Cottonwood's insurance coverage. By April of 1994 Zurich had already paid workers' compensation benefits in excess of $280,000 and it expects those benefits ultimately to exceed $1 million. When Zurich refused to enter into this settlement and release its right of subrogation, plaintiffs sought a writ of mandamus to compel acceptance of the settlement and plaintiffs' proposed distribution of the settlement proceeds.

Plaintiffs' counsel proposed a distribution based on the provisions of Minn.Stat. § 176.061, subd. 6 (1994), with the cost of collection set at 40 percent of the proceeds. The resultant distribution follows:

| | | |
|---|---|---|
| To plaintiffs' lawyer | $ 80,000 | (40% of $200,000) |
| To plaintiffs | $ 40,000 | (⅓ of $120,000 [$200,000 – $80,000] ) |
| To Zurich | $ 80,000 | (Remainder) |
| | $200,000 | |

The district court dismissed the petition and vacated the alternative writ, and the court of appeals affirmed.

■ The Workers' Compensation Act provides a comprehensive statutory system which has no counterpart in the common law, and it sets out the rights and obligations of both employee and employer in some detail. Section 176.061, subdivision 5(a) provides that an injured employee may institute an action against a third-party tortfeasor. That same subdivision provides that the employer is subrogated to the rights of the employee or has a right of indemnity, and it also provides that if the employee fails to prosecute the action diligently or if the court deems it advisable to protect the interests of the employer, the court may permit the employer to intervene. That same subdivision also permits the employer to maintain a separate action or continue the action already instituted, the action to be maintained in the name either of the employee or the employer for the recovery of damages. Whether such an action is prosecuted by the employee or the employer, the proceeds are to be distributed pursuant to subdivision 6 of this same section. Clause (b) of subdivision 5 creates a separate cause of action in the employer for any increase in workers' compensation premiums, such damages to be solely for the benefit of the employer. In addition, subdivision 7 provides the employer with another independent cause of action against a third-party tortfeasor to recover medical expenses; and if the amount recovered for that purpose is set out separately in the verdict, that amount is for the benefit of the employer alone. To the extent that it exceeds amounts that have already been expended for medical expenses, it does not affect in any way the amount of periodic compensation that the employer must pay the employee.

Finally, subdivision 8a provides for notice to the employer of an intention to settle a third-party action. In addition, subdivision 8a provides that if the employer or insurer pays compensation to the employee under the provisions of chapter 176 and becomes subrogated to the right of the employee or the employee's dependents or has a right of indemnity, any settlement between the employee or the employee's dependents and a third party is void as against the employer's right of subrogation or indemnity. Moreover, the employer is entitled to notice of the

**3.** It should be noted that in correspondence addressed to Zurich, plaintiffs' counsel refers to "the case of *Rollo and Dorothy Jackson v. Cottonwood Oil Co-op Company and Wachtler Construc-* *tion Company.*" If such an action was commenced, the record does not indicate that any pleadings were filed.

institution of a third-party action and to notice of trial. If the action proceeds to judgment, the employer's subrogation interest becomes a lien on the judgment.[4] As we have said before, section 176.061, "taken as a whole, presents a comprehensive plan for asserting the claims of both employer and employee against third parties and for distributing any sums recovered," *Allstate Ins. Co. v. Eagle–Picher Industries, Inc.,* 410 N.W.2d 324, 327 (Minn.1987); and it seems to us that when taken as a whole, one cannot read section 176.061 without concluding, as did the trial court and court of appeals, that the statutory arrangement differs from the common law and that without the employer's consent an employee cannot settle the entire action, including the employer's subrogation interest.

The dispute over the effect of a settlement in the absence of employer or insurer consent is now almost 40 years old. In *Lang v. William Bros Boiler & Mfg. Co.,* 250 Minn. 521, 85 N.W.2d 412 (1957), this court held that the employee could not settle the employer's subrogation action without the employer's consent. In *Liberty Mutual Ins. Co. v. Nutting Truck & Caster Co.,* 295 Minn. 211, 216, 203 N.W.2d 542, 545 (1973), the court remarked that an employee has the right to settle claims for damages outside the Workers' Compensation Act by excluding

from the settlement any amounts due the employer and insurer by way of subrogation, and in *Naig v. Bloomington Sanitation,* 258 N.W.2d 891, 894 (Minn.1977), we upheld a settlement which covered all damages except those covered under the Workers' Compensation Act. By 1991, the question had come full circle and we held that an employer could settle the subrogation claim without settling the employee's claim for damages which are not compensable pursuant to the Workers' Compensation Act. *Folstad v. Eder,* 467 N.W.2d 608, 612 (Minn.1991). In view of the long-settled rule articulated in *Lang v. William Bros Boiler & Mfg. Co., supra,* that an employee cannot settle the employer's subrogation interest without the employer's consent, we look on the adoption of subdivision 8a, a part of the 1983 revision of the Workers' Compensation Act, with its explicit provision that any settlement agreement between an employee and a third-party tortfeasor which purports to settle the employer's subrogation interest without the employer's consent "is void as against the employer's right of subrogation or indemnity," as clear manifestation of the legislature's intention to codify the existing case law.[5]

This is not to suggest that an employer or workers' compensation insurer may always withhold consent to a settlement agreement

**4.** Subdivision 8a, which subjects any "judgment rendered in the action * * * to a lien of the employer for the amount to which it is entitled to be subrogated or indemnified under the provisions of subdivision 5," has a rather interesting history. Originally, the protections of notice and lien were accorded only the state, as employer. Minn.Stat. § 176.06, subd. 3 (1945). Then, after this court declared a successor provision, Minn. Stat. § 176.061, subd. 8 (1980), unconstitutional, *Nelson v. State, Dep't of Natural Resources,* 305 N.W.2d 317 (Minn.1981), subdivision 8 was rewritten to include any employer and adopted as subdivision 8a. Act of June 7, 1983, ch. 290, § 35, 1983 Minn. Laws 1335.

**5.** The plaintiffs take the position that Minn.Stat. § 176.061, subd. 6 is not merely a formula for calculating the distribution of any recovery, but that it actually establishes the employer's subrogation interest so that if the employee settles, the settlement agreement forecloses the employer who is entitled to nothing more than what he can recover pursuant to subdivision 6. Not so. Prior to the adoption of Act of April 24, 1953, ch. 755, § 6, 1953 Minn. Laws 1105, *codified at* Minn.Stat. § 176.061, subd. 6 (1953), the em-

ployer was entitled to the satisfaction of its subrogation interest before the employee was entitled to make any recovery. In fact, originally the employer escaped having to pick up any of the expense of collection as well. The purpose of subdivision 6, as initially enacted, was to do no more than cast upon the employer the burden of assuming a pro rata share of costs, attorney fees, and reasonable expenses in forcing liability against and collecting from the third party. *Anderson v. Twin City Lines,* 289 Minn. 11, 14, 182 N.W.2d 193, 195 (1970); *Dockendorf v. Lakie,* 251 Minn. 143, 156, 86 N.W.2d 728, 736 (1957). Since then, subdivision 6 has undergone a series of revisions resulting in the current formula that allocates roughly one-third of a plaintiff employee's tort recovery to the employee outright after deduction of expenses of collection, the remainder to reimburse the employer for compensation paid, and any balance remaining thereafter to the employee but with a credit to the employer against future compensation payable. *See Hodder v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826, 837 (Minn.1988).

without regard to the circumstances, it is simply to recognize that a portion of the claim against a third-party tortfeasor belongs to the employer and that the employer has the same right as the employee to control the disposition of that part of the claim that belongs to the employer. In the present case the plaintiffs' lawyer bypassed the insurer's counsel, directly notifying the insurer of a possible *Naig* settlement—a type of settlement which does not require the insurer's consent. The record does not indicate that the insurer was informed of negotiations for a settlement which would include its subrogation interest until after the plaintiffs had entered into the settlement. Under these circumstances there can be no doubt that the settlement agreement between the plaintiffs and Cottonwood is void as against the employer's and insurer's right of subrogation and that Zurich cannot be compelled to consent to the settlement or to release its subrogation interest.

Affirmed.