STATE FUND MUTUAL INSURANCE COMPANY, Appellant,

Delbert Doubrava, et al., Respondents,

v.

Jack MEAD, et al., Respondents,

Kane Transport, Inc., Respondent.

No. A04–561.

Court of Appeals of Minnesota.

Feb. 1, 2005.

M. Chapin Hall, Lynn, Scharfenberg & Associates, Minneapolis, MN, for appellant.

David K. Cody, Richard O'Dea, Palmer, Cody & O'Dea, LLC, Roseville, MN, for respondents Delbert and Judy Doubrava.

Considered and decided by SHUMAKER, Presiding Judge, RANDALL, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant insurance company challenges the district court's order denying its motion to intervene, arguing (1) that it is entitled to party status because respon-

dents do not adequately represent and protect its workers' compensation subrogation interest in the lawsuit and (2) that it should be allowed to intervene so it can conduct discovery concerning the tortfeasor's assets. Appellant also moves to dismiss issues allegedly raised by respondent on appeal for the first time. Respondents separately argue that the district court erred in denying their request for attorney fees and costs. Because we conclude that the district court did not abuse its discretion by denying respondents' motion for attorney fees, we affirm in part. But because we conclude that the district court erred by denying appellant's motion to intervene as of right, we reverse in part and remand. Appellant's motion to dismiss issues on appeal is denied because it is now moot.

## FACTS

In June 2000, respondent Delbert Doubrava sustained serious injuries as a result of a motor-vehicle accident caused by respondent Jeremy Mead. At the time of the accident, Doubrava was working in the course and scope of his employment with Kane Transport, Inc. (Kane).

Mead was driving a vehicle owned by his father and that was insured by Federated Mutual Insurance Company (FMIC), with a policy limit of $300,000. Kane was insured for workers' compensation coverage by appellant State Fund Mutual Insurance Company (State Fund). Soon after the accident, Delbert and his wife, Judy Doubrava, initiated both a workers' compensation claim against Kane and a personal-injury claim against Mead.

In mid–2003, the Doubravas secured a settlement offer from Mead for his adjusted policy limits in the amount of $296,390.[1] The Doubravas moved for approval of the settlement and provided the district court with the results of an asset search that revealed that Mead "ha[d] no assets of significance which could be pursued if a judgment in excess of the underlying insurance policy limits was obtained." Mead subsequently confirmed this information in a sworn affidavit.

State Fund moved to intervene in order to block the settlement and the potential exhaustion of its workers' compensation subrogation interest,[2] asserting that Mead had other financial resources which had not yet been disclosed, including future wages. After the Doubravas' counsel was properly notified of State Fund's motion to intervene, they objected within 30 days, as required by Minn. R. Civ. P. 24.03.[3]

The district court found that it was not reasonable to allow State Fund to intervene for the primary purpose of blocking the settlement offer and ultimately concluded that the motion to intervene was premature because the district court had not yet ruled on the settlement motion. In addition to denying State Fund's request for intervention, the court also denied its motions to compel discovery and for sanctions against the Doubravas' attorney. The court further denied the Doubravas'

1. A balance of $296,390 from the $300,000 policy limit remained because $3,610 had already been paid for property damage.

2. State Fund alleges that its total subrogation claim is approximately $250,000—$111,961.32 representing workers' compensation benefits paid to and on behalf of the Doubravas by State Fund and the balance representing future payable benefits.

3. While State Fund had previously filed a motion to intervene in October 2003, it failed to serve the motion upon the Doubravas' counsel. State Fund's argument that the Doubravas failed to timely object is thus without merit.

request for attorney fees. This appeal follows.

## ISSUES

1. Did the district court err by denying State Fund's motion for intervention of right?

2. Did the district court abuse its discretion by denying the Doubravas' attorney-fees request?

## ANALYSIS

### I.

 State Fund argues that it is entitled to intervene as a party because the Doubravas are not adequately representing and protecting its subrogation interest in the lawsuit. Orders concerning intervention as a matter of right, pursuant to Minn. R. Civ. P. 24.01, are subject to de novo review and are independently assessed on appeal. *Norman v. Refsland,* 383 N.W.2d 673, 676 (Minn.1986). Moreover, this court is "not held to a standard of review requiring a clear abuse of discretion before [it] may reverse the district court denial for a petition for intervention as of right." *Id.* In order to intervene as of right, a nonparty must demonstrate the following:

(1) timely application for intervention;

(2) an interest relating to the property or transaction which is the subject of the action;

(3) circumstances demonstrating that the disposition of the action may as a practical matter impair or impede the

party's ability to protect that interest; and

(4) a showing that the party is not adequately represented by the existing parties.

*Blue Cross/Blue Shield of Rhode Island v. Flam,* 509 N.W.2d 393, 395–96 (Minn.App. 1993) (citing Minn. R. Civ. P. 24.01), *review denied* (Minn. Feb. 24, 1994). In rejecting State Fund's motion to intervene, the district court ultimately concluded that the motion was untimely.

State Fund argues that it should be permitted to intervene because the Doubravas have not diligently prosecuted the claim or adequately represented its subrogation interest, as required by Minn.Stat. § 176.061, subds. 5(a), 8a (2004).[4] State Fund contends that its interests have been inadequately represented because its subrogation right will be extinguished and the Doubravas' attorneys will "reap a windfall of attorney fees" if the settlement is approved.[5]

 The Minnesota Workers' Compensation Act (WCA) creates and describes the subrogation rights of employers and insurers who have paid workers' compensation benefits. Minn.Stat. § 176.061 (2004). "When a compensable injury is caused by a party other than the employer, the [WCA] gives the employee a right to workers' compensation benefits from the employer while preserving the employee's common law right of action against the tortfeasor." *Conwed Corp. v. Union Carbide Chems. & Plastics Co.,* 634 N.W.2d 401, 406 (Minn.2001). Normally,

---

4. We note that Doubrava's injury occurred in June 2000. State Fund moved to intervene in January 2004. Only minor changes not relevant to our analysis were made to the Workers' Compensation Act (WCA) in 2000. Accordingly, for ease of reference, we cite to the 2004 version of the WCA throughout this opinion.

5. Under the statutory formula of Minn.Stat. § 176.061, subd. 6 (2004), the Doubravas estimate the following allocation between the parties: $99,730.50 to the Doubravas' attorneys; $65,487.54 to the Doubravas; $73,894.46 to State Fund; and the remaining balance of $57,277.27 to the Doubravas, with future credit to State Fund.

an employer who pays workers' compensation benefits to an employee injured by a third party's negligence is entitled to bring a subrogation action against the third party and seek reimbursement for those payments. *Id.*

Minn.Stat. § 176.061, subds. 5(a) and 8a, address the intervention and settlement rights of an employer-insurer. Subdivision 5(a) reads, in pertinent part:

> If an action against the other party is brought by the injured employee ... [and][i]f the action is not diligently prosecuted or if the court deems it advisable in order to protect the interests of the employer ..., upon application the court may grant the employer ... the right to intervene in the action for the prosecution of the action.

Minn.Stat. § 176.061, subd. 5(a). Subdivision 5(a) thus explains that the employer is subrogated to the rights of the employee, but also provides that if the employee fails to prosecute the action diligently or if the court deems it advisable to protect the interests of the employer, the court may permit the employer to intervene. *Jackson v. Zurich Am. Ins. Co.*, 542 N.W.2d 621, 623 (Minn.1996).

Subdivision 8a provides for notice to the employer of an intention to settle a third-party action, which has been accomplished in this case. More importantly, in pertinent part, subdivision 8a reads:

> If the employer or insurer pays compensation to the employee under the provisions of this chapter and becomes subrogated to the right of the employee or the employee's dependents or has a right of indemnity, *any settlement* between the employee or the employee's dependents and the third party *is void as against the employer's right of subrogation* or indemnity.

Minn.Stat. § 176.061, subd. 8a (emphasis added). The supreme court specifically addressed subsection 8a in *Jackson.* 542 N.W.2d 621.

In *Jackson*, a worker sustained injuries under the WCA. The worker's employer and its workers' compensation insurer accepted liability and paid various workers' compensation benefits. *Id.* at 622. The insurer was represented with respect to its subrogation interest and had been advised of pending settlement negotiations between the plaintiffs and a third party, the owner of the property on which the injury occurred. *Id.* Without the consent of the insurer, plaintiffs' counsel negotiated a $200,000 settlement with the third party, which included all claims against it, including the insurer's subrogation interest. *Id.* at 622–23. The insurer refused to sign a release for the $200,000 settlement, "which contemplated a payment of not more than 20 percent of the liability limit of [the third party's] insurance coverage." *Id.* at 623. In response, plaintiffs sought a writ of mandamus to compel acceptance of the settlement and plaintiffs' proposed distribution of the proceeds. *Id.* The district court dismissed the petition, and we affirmed. *Id.* at 622. The supreme court further affirmed and concluded that "when taken as a whole, one cannot read section 176.061 without concluding ... that without the employer's consent an employee cannot settle the entire action, including the employer's subrogation interest." *Id.* at 624.

■ While the Doubravas do not comment on the breadth of their settlement agreement with the Meads, they argue that State Fund's intervention should be denied because they have an agreement with Meads' insurer to pay its policy limits. The Doubravas distinguish *Jackson* on the basis that the *Jackson* employee's settlement with the tortfeasor was only for 20% of the policy limits. But the Doubra-

vas fail to address the critical issue from *Jackson*—whether or not the employer's subrogation interest is preserved by the underlying settlement. The underlying settlement in *Jackson* involved a comprehensive settlement of all claims and was not a *Naig* settlement.[6] *Jackson*, 542 N.W.2d at 622–23. The focus of the supreme court's analysis in *Jackson* rested on this fact, as opposed to the percentage of the policy limits, which the Doubravas have argued.

Therefore, the critical question is whether the settlement proposed by the Doubravas—in the context of the suit against the Meads—compromises the subrogation interest of State Fund. The record on appeal does not answer this question. But in response to questioning at oral argument, Doubravas' counsel stated that this settlement is not a *Naig* settlement. It is therefore a comprehensive settlement that would settle State Fund's interest without its consent.

Here, the district court placed great weight on *Jackson* to support its conclusion that State Fund's motion to intervene was premature and should have come *after* the court had an opportunity to rule on the settlement motion. The court reasoned that if settlement were eventually granted, State Fund would properly "be permitted the opportunity to intervene [regarding]

the division of the [settlement] proceeds" under Minn.Stat. § 176.061, subd. 6 (2004).[7] The district court also noted that Mead "appears to lack the financial resources to respond to a claim beyond that of the policy limits which are already being tendered [by his insurer, FMIC]." In denying State Fund's motion to intervene, the district court essentially ruled that its motion was untimely.

 The determination of whether intervention is timely must be considered on a case-by-case basis. *Omegon, Inc. v. City of Minnetonka*, 346 N.W.2d 684, 687 (Minn.App.1984), *review denied* (Minn. June 12, 1984). "Timeliness of an application depends on factors such as how far the suit has progressed, the reason for the delay in seeking intervention, and any prejudice to the existing parties because of the delay." *Blue Cross/Blue Shield*, 509 N.W.2d at 396. In addition, intervention should not be allowed where circumstances show that the would-be intervenor was aware of the suit and permitted it to proceed, waiting to see if the outcome would be favorable to its interest. *Id.*

But given the circumstances here and the clear language of Minn.Stat. § 176.061, subd. 8a—that "*any settlement* between the employee or the employee's dependents and the third party *is void as against the employer's right of subroga-*

---

**6.** *Naig* settlements are settlements "wherein the employee recovers from the third party all damages not recoverable under worker's compensation, notifies the employer of the settlement negotiations, and expressly reserves the employer's right to be subrogated to the employee's negligence claim pursuant to Minn.Stat. § 176.061." *M.W. Ettinger Transfer & Leasing Co. v. Schaper Mfg., Inc.*, 494 N.W.2d 29, 32 (Minn.1992) (citing *Naig v. Bloomington Sanitation*, 258 N.W.2d 891, 894–95 (Minn.1977)).

**7.** Any tort recovery an employee receives in judgment or in settlement is to be divided

between the employee and the employer-insurer.

> Under subdivision 6, the employee's tort recovery is divided as follows: first, collection expenses and attorney fees (about 1/3 of the recovery); then 1/3 outright to the employee; next the employer's subrogation claim less a pro rata share for attorney fees; and finally, any balance remaining to the employee subject to a credit to the employer for any future benefits payable.

*Kliniski v. Southdale Manor, Inc.*, 518 N.W.2d 7, 9 n. 2 (Minn.1994).

*tion* or indemnity"—we conclude that State Fund must be given the right to intervene before approval or disapproval of the settlement motion in order to protect its subrogation interest. *Id.* (emphasis added). If State Fund is not permitted to intervene and the settlement motion is approved, State Fund's subrogation right would be completely compromised without its input, and its only relief would lie within the confines of the allocation formula of subdivision 6. Even if evidence exists that Mead is in all likelihood judgment-proof, State Fund should be allowed to refute this evidence *before* a settlement is approved. As in *Norman*, here State Fund "has met its burden under Rule 24.01 by proving that it has an interest in the action and that its interest would be impaired or impeded by not fully participating in the litigation." 383 N.W.2d at 677.

▅▅ Moreover, the supreme court has emphasized that, "under modern practice, the extensive use of intervention should be encouraged." *Id.* at 678. It has also continuously "stressed the value of intervention for the employer seeking to protect its subrogation rights." *Id.; see also Easterlin v. State*, 330 N.W.2d 704, 708 (Minn. 1983) (explaining that "it is important for the employer, if the employee has already commenced suit, to be able to appear therein or to exercise its statutory right to intervene."). It is thus our policy to encourage intervention whenever possible. *Norman*, 383 N.W.2d at 678.

Given the clear directive of subdivision 8a, as well as State Fund's important interest in protecting its subrogation interest, we fail to see how the circumstances here could deny State Fund its statutory right to vigorously protect that interest. In restating the rule of subdivision 8a, *Jackson* highlights the statute's *"explicit provision that any settlement agreement* between an employee and a third-party tortfeasor which purports to settle the employer's subrogation interest without the employer's consent *'is void as against the employer's right of subrogation . . . .' "* 542 N.W.2d at 624 (emphasis added) (quoting Minn.Stat. § 176.061, subd. 8a). We therefore reverse and remand with instructions that State Fund be permitted to intervene at this point in the litigation in order to protect its subrogation interest *before* the district court rules on the settlement motion.

Finally, State Fund argues that it should be allowed to intervene so it can conduct discovery with regard to fact issues such as the reasonableness of the Doubravas' attorney fees in the underlying settlement proposal. Because we reverse and remand the district court's ruling denying intervention, we need not address this related claim here.

## II.

▅▅ In their notice of review, the Doubravas separately argue that the district court erred in denying their request for attorney fees and costs against State Fund. The standard of review for an appellate court examining an award or denial of attorney fees and costs is whether the district court abused its discretion. *Minn. Council of Dog Clubs v. City of Minneapolis*, 540 N.W.2d 903, 904 (Minn.App. 1995), *review denied* (Minn. Jan. 25, 1996).

The Doubravas submitted their motion for attorney fees and sanctions under Minn. R. Civ. P. 11 and Minn.Stat. § 549.211 (2004). The motion was based on State Fund's attempts to depose the Doubravas' attorney and conduct other allegedly improper discovery, prior to having been granted intervention status in the underlying liability action. The district court summarily denied the request without discussion in its opinion.

Minn.Stat. § 549.211, subd. 2, provides that an attorney who presents any document to the court must certify four things:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

*Id.* The dispute here seems to center around State Fund's initial failure to give notice to the Doubravas' counsel of its motion to intervene in the case. *See* n. 3 (above). When State Fund gave notice of intervention to the Doubravas—but not their counsel—it proceeded with discovery on the "reasonable cost of collection" issue under Minn.Stat. § 176.061, subd. 6(a) ("After deducting the reasonable cost of collection, including but not limited to attorneys fees ..."). This was presumably done in an effort to challenge the Doubravas' projected attorney fees under the proposed settlement as "unreasonable." *See City of Minnetonka v. Carlson,* 298 N.W.2d 763, 766–67 (Minn.1980) (articulating factors to be considered in determining the reasonableness of attorney fees). But under these facts, and given the potential misunderstanding, we determine that the district court did not abuse its broad discretion by denying the Doubravas' request for attorney fees.

## III.

In a motion filed with this court just before oral argument, State Fund seeks to dismiss issues that it alleges the Doubravas raised for the first time on appeal in their brief. State Fund claims that the Doubravas did not argue to the district court (1) that Minn.Stat. § 176.061 refers only to "employer" and not to "insurer," thereby precluding statutory rights to a workers' compensation insurer, and (2) that State Fund's intervention was untimely. But given our decision to permit State Fund's intervention on the merits, we deny State Fund's motion as moot.

## DECISION

Because the district court erred by denying State Fund's motion to intervene, we reverse and remand with instructions for the district court to permit the intervention, as required by Minn.Stat. § 176.061, subd. 8a (2004). In addition, we affirm the district court's denial of attorney fees and deny State Fund's motion to dismiss issues allegedly raised on appeal for the first time.

**Affirmed in part, reversed in part, and remanded; motion denied.**