*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0934**

Robert Kagel,
Respondent,

vs.

Christian Brackey, et al.,
Appellants,

Kagel Acquisition Company, LLC,
Defendant.

**Filed January 25, 2016
Affirmed in part, reversed in part, and remanded
Smith, Judge**

Hennepin County District Court
File No. 27-CV-12-12925

Scott S. Payzant, Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., Minneapolis, Minnesota (for respondent)

Shawn M. Perry, Perry & Perry, PLLP, Minneapolis, Minnesota (for appellants)

Considered and decided by Bjorkman, Presiding Judge; Smith, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SMITH**, Judge

We affirm the district court's forced-buyout order because the record supports the district court's findings on the requisite statutory requirements, and we affirm the district court's denial of attorney fees and costs against co-appellant Robert Brackey because he was not a party. But we reverse the district court's valuation determination because the district court abused its discretion when it failed to consider appellant Christian Brackey's (Brackey) evidence of rent owed, and we reverse the district court's dismissal of Robert Brackey's motion to intervene as a matter of right because he met the requirements to intervene. We therefore remand for further proceedings.

## FACTS

This appeal stems from a dispute between two owners of four limited liability companies: Pear Marketing, LLC; Bay Auto Finance, LLC; In a Pinch, LCC; and Kagel Acquisition Company, LLC (KAC). Respondent Robert Kagel (Kagel) and Brackey operated a used-car business together through these companies. Pear Marketing, Bay Auto Finance, and In a Pinch were businesses related to auto sales, and KAC owned the building that housed the other three businesses.

In 2011, due to a business dispute, Kagel and Brackey entered into a mediated settlement agreement (MSA), and Brackey and KAC, along with the other companies, signed a confession of judgment in favor of Kagel for $1,306,000 plus interest. The MSA provided for the liquidation of the four companies and limited Brackey's involvement in the businesses.

Brackey ignored the MSA's prohibitions, and Kagel then initiated an arbitration to obtain a finding of Brackey's default under the MSA. Before the arbitration, the parties entered into a second agreement. The second agreement provided that, among other things, $1.15 million would be deposited into escrow for Kagel no later than September 9, 2011, and that if the conditions were not met, Kagel could file the previously referenced confession of judgment. The conditions were not met, so Kagel filed the confession of judgment.

In June 2012, Kagel initiated this action. Shortly thereafter, Robert Brackey, Brackey's father, moved to intervene as a matter of right under Minn. R. Civ. P. 24.01 to protect the security interest he had perfected in the financial rights of Brackey's KAC membership interest. In July 2012, Kagel moved to force a buyout of Brackey's membership interest in KAC under Minn. Stat. § 322B.833 (2014) or, alternatively, Minn. Stat. § 575.05 (2014).

The district court ordered a process whereby the parties would obtain an appraisal of KAC's property, Kagel would then make an offer on the property, and if the parties could not agree on the sale, they would be deemed deadlocked under Minn. Stat. § 322B.833, subd. 1(2)(i). Kagel and Brackey agreed on an appraiser, and the appraiser estimated the property's value at $1.95 million, less necessary repairs.

Kagel then proposed alternatives for the disposition of KAC's property: (1) that Kagel buy KAC's property; (2) that they sell KAC's property to Robert Brackey; or (3) a later suggestion that they list KAC's property with a real-estate agent. Brackey rejected all proposals.

3

In September 2013, the district court determined that the parties were deadlocked, that Brackey had acted fraudulently and in a manner prejudicial to Kagel in his capacity as a 50% owner of KAC, and that Kagel was a creditor of KAC and therefore that a forced buyout of Brackey's membership interest in KAC was within the district court's equitable powers. *See* Minn. Stat. § 322B.833, subds. 1, 2. Alternatively, the district court found that the transfer was warranted under Minn. Stat. § 575.05 because Kagel was Brackey's creditor and Brackey's limited liability company (LLC) membership interest was nonexempt property.

The district court ordered Brackey to transfer his membership interest to Kagel and ordered the parties to determine the fair value of Brackey's membership interest, which would equal the reduction in Kagel's judgment against Brackey. If the parties could not agree on fair value within 40 days, the district court would determine the amount of the reduction. The district court also dismissed Robert Brackey's motion to intervene with prejudice and granted Kagel's request for attorney fees and costs against Brackey under Minn. Stat. § 322B.833, subd. 7.

In October 2013, Brackey transferred his membership interest in KAC to Kagel. Kagel, on behalf of KAC, entered into a purchase agreement for the sale of KAC's property for $1.5 million to the City of Brooklyn Center Economic Development Authority (BCEDA). Later, Brackey moved the district court to issue a new scheduling order, to permit additional discovery, and to require KAC to appear through independent counsel. He also requested leave to amend his answer.

4

Because the parties could not agree on the value of Brackey's interest, the district court held a hearing in February 2014. The district court considered the matter finished, with the valuation determination the only remaining issue, and made clear that it would not reopen the case. The district court considered KAC's property to be KAC's only asset and ignored Brackey's assertions to the contrary.

In April 2014, BCEDA and Kagel, acting as the sole agent on behalf of KAC, closed on the sale of KAC's property for $1.5 million. As part of the sale, Kagel released his judgment lien against KAC's property. Using the proceeds from the sale, KAC paid off the two mortgages against the property, taxes, and other fees, leaving $194,286.90 remaining for KAC.

In May 2014, the district court denied Brackey's motions, determined the value of Brackey's membership interest via the property sale, and ordered Brackey to pay Kagel's fees and costs in the amount of $54,177.54. The district court determined that Kagel's judgment against Brackey would be reduced by $194,286.90. The district court also denied Kagel's request for attorney fees and costs from Robert Brackey because he was not a party.

## D E C I S I O N

### I.

A court-ordered statutory buyout is an equitable remedy, *see* Minn. Stat. § 322B.833, subds. 1, 2, and a court of equity "is to be accorded broad latitude," *Bolander v. Bolander*, 703 N.W.2d 529, 548 (Minn. App. 2005), *review denied* (Minn. Nov. 15, 2005). "We review the district court's exercise of equitable relief for abuse of

5

discretion." *Bolander*, 703 N.W.2d at 548. "A district court abuses its discretion if its decision is against the facts in the record or if its ruling is based on an erroneous view of the law." *State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cnty. Bd. of Cnty. Comm'rs*, 799 N.W.2d 619, 625 (Minn. App. 2011) (quotations omitted). An abuse of discretion does not warrant reversal unless the appellant shows prejudice resulting from the error. *Midway Ctr. Assocs. v. Midway Ctr. Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975).

## A. Grounds for Buyout

Brackey challenges the district court's findings regarding grounds for ordering a buyout. A district court may order the equitable relief it deems fit when, among other things, (1) those in control of the company are deadlocked and cannot resolve the deadlock; (2) those in control have acted "fraudulently" or "in a manner unfairly prejudicial toward one or more members in their capacities as members"; or (3) in actions by creditors when the claim "has been reduced to judgment and an execution on the judgment has been returned unsatisfied" or the company has admitted the creditor's claim and is "unable to pay its debts in the ordinary course of business." Minn. Stat. § 322B.833, subd. 1(2), (3).

Brackey first argues that the district court abused its discretion in finding that a deadlock existed. The record supports the district court's finding. Before finding a deadlock, the district court required the parties to obtain an appraisal of KAC's property and required Kagel to make an offer based on that appraisal. The parties followed the procedure, but Brackey rejected Kagel's offer to buy KAC's property, Kagel's offer to

6

have Robert Brackey purchase KAC's property, and Kagel's suggestion to list KAC's property with a real-estate agent.

Brackey counters that Kagel's offer to purchase KAC's property and his own refusal of that offer cannot constitute a deadlock because Kagel was required to prove his offer to be reasonable under Minn. Stat. § 322B.666, subd. 1 (2014), and, as an interested party, Kagel could not participate in a vote to approve the sale. Even if that statute is applicable, Brackey ignores the fact that he rejected all of Kagel's proposals, not just Kagel's offer to purchase KAC's property. In essence, Brackey refused to work with Kagel in continuing what the MSA ordered—a liquidation of the parties' companies—and in doing so, perpetuated the ongoing deadlock in the operation of KAC. *See* Minn. Stat. § 322B.833, subd. 1(2)(i) (allowing equitable relief when there is a deadlock "in the management of the affairs of the limited liability company").

Brackey also contends that the district court abused its discretion in finding that he acted in an unfairly prejudicial manner towards Kagel in his capacity as a 50% owner of KAC. The record supports the district court's determination. Kagel submitted the affidavit of Lois O'Neill, the business manager appointed pursuant to the MSA, who stated that Brackey had attempted to fire her and had changed the locks on KAC's building. O'Neill's affidavit also stated that, in direct contravention of the MSA, Brackey attempted to divert funds from KAC's accounts. The record therefore supports the district court's conclusion that Brackey acted in an unfairly prejudicial manner. *See Berreman v. W. Publ'g Co.,* 615 N.W.2d 362, 373 (Minn. App. 2000) ("The term

'unfairly prejudicial' should be liberally construed."), *review denied* (Minn. Sept. 26, 2000).

Brackey further contends that Kagel's status as a creditor cannot be the basis for a buyout because section 322B.833, subdivision 2 allows for a buyout on motion only if one or more of the circumstances described in subdivision 1, clause 2 is established, and the creditor provision is located in clause 3, not clause 2. This is true, but Brackey overlooks the plain language of section 322B.833, subdivision 1 that the district court may "grant any equitable relief it considers just and reasonable." A buyout is an equitable remedy. *Sundberg v. Abbott*, 423 N.W.2d 686, 688 (Minn. App. 1988), *review denied* (Minn. June 29, 1988).

Moreover, the record supports the district court's finding. The confession of judgment provided that Brackey in his personal capacity and KAC, along with the parties' other companies, would be liable to Kagel. Kagel later filed the confession of judgment. KAC made no payments to Kagel and had no prospect of doing so because the parties' businesses, which were housed in KAC's property, had been liquidated and their assets sold pursuant to a court-approved asset-purchase agreement. In short, KAC "admitted in writing that the claim of the creditor is due and owing . . . and that [KAC] is unable to pay its debts . . . ." *See* Minn. Stat. § 322B.833, subd. 1(3)(ii).

Brackey further argues that a buyout cannot be ordered when material fact issues exist and when the district court makes credibility determinations. There are two problems with this argument. First, the district court did not make credibility determinations in its September 2013 buyout order, but only in its May 2014 valuation

8

order.  Second, Brackey's reliance on *Powell v. Anderson*, 660 N.W.2d 107 (Minn. 2003) to support his argument is misguided.

*Powell*'s focus was on the potential effect of a Court of Appeals judge's failure to recuse himself on the ultimate decision.  660 N.W.2d at 110.  The Minnesota Supreme Court examined this court's review of an appeal from summary judgment and vacated our decision because it was based, in part, on deferring to the district court's improper credibility determinations at the summary-judgment stage.  *Id.* at 121-24.  Nothing in *Powell* stands for the proposition that a district court cannot make credibility determinations or that summary-judgment standards apply in a motion for equitable relief under Minn. Stat. § 322B.833.

Brackey finally argues that the district court should have ordered KAC's liquidation instead of forcing Brackey to transfer his interest to Kagel.  We disagree.  A district court is required to consider the reasonable expectations of the members and any written agreements.  Minn. Stat. § 322B.833, subd. 4.  While it is true that the parties' MSA contemplated an orderly liquidation, it is also true that the district court found that Brackey's refusal to sell KAC's property frustrated the execution of that agreement.  And a district court "may grant any equitable relief it considers just and reasonable in the circumstances . . . ." *Id.*, subd. 1.

The district court did not abuse its discretion in ordering the transfer of Brackey's membership interest under Minn. Stat. § 322B.833.[1]  Therefore, we do not address

---

[1] In the conclusion to his brief, Brackey asks this court to reverse the award of attorney fees and costs to Kagel, but Brackey's brief lacks analysis or argument on this point.  We

9

Brackey's argument that the district court erred in alternatively ordering the buyout under Minn. Stat. § 575.05.

## B.    Valuation Procedure

Brackey next raises several arguments about the district court's valuation procedure.  He argues that the district court's valuation determination violated his right to due process.  "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties and afford them an opportunity to be heard." *Graham v. Itasca Cty. Planning Comm'n*, 601 N.W.2d 461, 464 (Minn. App. 1999).

We find no due-process violation.  Brackey had ample notice of and opportunity to be heard on the valuation issue.  Kagel moved for a court-ordered buyout in 2012, and his position did not change through the district court's final order in May 2014.  During that time, Brackey submitted numerous documents, was apprised of all proceedings, and was represented by counsel at three separate hearings.  Brackey was therefore provided with notice and an opportunity to be heard.  *See id.* at 464.  And, although it is not essential to our due-process analysis, we note that in opposing Kagel's motion for equitable relief, Brackey had numerous opportunities to "present evidence to oppose the relief ultimately given."  *See Claussen v. City of Lauderdale*, 681 N.W.2d 722, 726 (Minn. App. 2004), *review denied* (Minn. Sept. 21, 2004).

---

therefore decline to consider this issue.  *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (noting that issues "not argued in the briefs . . . must be deemed waived").

Brackey also argues that the district court failed to follow the correct statutory procedure. Brackey's argument raises an issue of statutory interpretation, which we review de novo. *See Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009).

Brackey contends that the district court needed to decide whether one of the factual circumstances existed to order the buyout and then order the transfer in a separate proceeding under Minn. Stat. § 322B.833. The statute does not require separate proceedings, it provides only that equitable relief, including a buyout, may be granted "when it is established that" the requisite grounds for relief exist. *See* Minn. Stat. § 322B.833, subd. 1(2). The district court made 11 pages of factual findings before concluding that three of the possible predicates for equitable relief existed. The district court then ordered Brackey to transfer his entire membership interest to Kagel. In sum, the district court did what the statute requires: it determined that the factual predicates for equitable relief existed *before* ordering that relief.

Brackey next argues that section 322B.833, subdivisions 1 and 2, prescribe a four-step process that requires value to be determined before a member's interest may be transferred. Brackey's position is again misguided. Section 322B.833, subdivision 1 allows a district court to order equitable relief upon the finding of the requisite factual predicates without mentioning any specific process. Section 322B.833, subdivision 2 states that a district court may order a buyout if the "order would be fair and equitable." It goes on to state that the parties have 40 days from the entry of the order to agree upon a price and that if no agreement is reached "the [district] court shall determine the fair value of the membership interests." We conclude that nothing in section 322B.833,

11

subdivisions 1 and 2, mandates the four-step process Brackey advocates. The district court did not err in ordering the transfer of Brackey's membership interest before determining its value.

## C.     Value Determination

Brackey also argues that the district court abused its discretion in determining the value of his membership interest. The district court's valuation determination is reviewed for an abuse of discretion. *See Bolander*, 703 N.W.2d at 548.

If parties cannot agree on the LLC membership interest's fair value within 40 days of an order for its sale, it is left to the district court to "determine the fair value of the membership interests under the provisions of section 322B.386, subdivision 7." Minn. Stat. § 322B.833, subd. 2. The statute states in relevant part:

> [The district court] shall determine the fair value of the membership interests, taking into account *any and all factors the court finds relevant*, computed by any method or combination of methods that the court, in its discretion, sees fit to use . . . .

Minn. Stat. § 322B.386, subd. 7 (2014) (emphasis added).

Brackey first argues that the district court abused its discretion in finding that $1.5 million was the fair value of KAC's property. In determining whether the sale price of $1.5 million was the fair value, the district court considered a number of factors: (1) the $1.95 million appraisal; (2) BCEDA's $1.5 million offer; (3) the property's $1.3 million tax value; (4) Lois O'Neill's affidavit stating that repairs were needed on the building's HVAC unit, roof, and parking lot; and (5) the repair estimates in excess of $600,000

12

submitted by Kagel.[2]  We find this portion of the district court's valuation determination free of error.

Brackey also argues that the district court abused its discretion because it did not consider the evidence he presented of rent due to KAC.  We agree.  In opposing the buyout motion, Brackey alleged that KAC was owed rent from Kagel and Brackey's former companies; that while Kagel was in control of KAC, he caused KAC to rent its property to a Kagel-owned company at below-market value; and that Kagel's company did not pay some of the rent.  Brackey submitted a copy of the lease between KAC and Kagel's company.  This lease called for monthly payments between $7,000 and $8,000.  As Brackey notes, the parties' jointly-appointed appraiser observed that the Kagel-owned company's lease with KAC was "well below market rate."  At the February 2014 hearing and in the May 2014 order, the district court disregarded Brackey's assertions and found that KAC's property was its only asset.

The district court abused its discretion.  Although the district court has broad discretion to consider "any and all factors the [district] court finds relevant," such discretion did not give the district court permission to disregard Brackey's evidence that KAC had another asset in the form of rent due.  *See id.*  As Brackey notes, our supreme court, in interpreting "fair value" under the Minnesota Business Corporations Act, stated that fair value "means the pro rata share of the value of the corporation as a going

---

[2] The district court also found that because Kagel (on behalf of KAC) sold the property without a broker there were no commission costs and that the repair estimates submitted by Kagel were reasonable.

13

concern." *Advanced Commc'n Design, Inc. v. Follett*, 615 N.W.2d 285, 290 (Minn. 2000).[3]

In its May 2014 order, the district court found that "KAC is not operational.  It does not generate profits."  By the time of the valuation hearing, Kagel's counsel asserted that no tenants remained in KAC's building.  But as a going concern, KAC leased property and, according to Brackey, was owed substantial amounts of rent.  By not considering the evidence presented, the district court abused its discretion and prejudiced Brackey because any reduction in Kagel's judgment against Brackey was specifically tied to KAC's assets, which would include rent owed to KAC.  *See Midway Ctr. Assocs.*, 306 Minn. at 356, 237 N.W.2d at 78 (requiring error and prejudice before reversing).

We therefore reverse and remand for further proceedings on the valuation issue, so that the district court may fully consider Brackey's evidence of rent owed to KAC.

**II.**

Brackey also contends that the district court abused its discretion in denying his request to amend his answer.  "[T]he decision to permit or deny amendments to pleadings is within the discretion of the district court and will not be reversed absent a clear abuse of discretion."  *Johns v. Harborage I, Ltd.*, 664 N.W.2d 291, 295 (Minn. 2003).  Minnesota Rule of Civil Procedure 15.01 allows a party to amend as a matter of course within prescribed time limits, but if a party does not meet those deadlines, the party "may amend a pleading only by leave of court . . . and leave shall be freely given when justice

---

[3] The interpretation of chapter 302A, the business-corporations statute, guides this court's interpretation of chapter 322B.  *See Stone v. Jetmar Props., LLC*, 733 N.W.2d 480, 486 (Minn. App. 2007).

so requires." "But leave to amend should not be granted when doing so would result in prejudice to the other party." *Schober v. Comm'r of Revenue*, 853 N.W.2d 102, 112-13 (Minn. 2013) (quotation omitted).

The district court did not abuse its discretion. In denying Brackey's request to amend, the district court noted that this request came nearly two years after Kagel initiated the action. Given the relative untimeliness of Brackey's request and the limited issues remaining for the district court to resolve, it was within the district court's discretion to deny Brackey's request to amend. *See Johns*, 664 N.W.2d at 295. Moreover, to the extent that Brackey's counterclaims addressed rent owed to KAC, Brackey will have an opportunity to present those claims in a valuation hearing.

### III.

Robert Brackey argues that the district court erred in dismissing his motion to intervene as a matter of right under Minn. R. Civ. P. 24.01. "Orders concerning intervention as a matter of right . . . are subject to de novo review and are independently assessed on appeal." *State Fund Mut. Ins. Co. v. Mead*, 691 N.W.2d 495, 499 (Minn. App. 2005). To intervene, the nonparty must show:

> (1) timely application for intervention;
> (2) an interest relating to the property or transaction which is the subject of the action;
> (3) circumstances demonstrating that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and
> (4) a showing that the party is not adequately represented by the existing parties.

*Id.* (quotation omitted); *see* Minn. R. Civ. P. 24.01.

*Timeliness*

Timeliness is determined on a case-by-case basis and implicates factors such as (1) how far the suit has progressed, (2) the reason for any delay in seeking intervention, and (3) potential prejudice to existing parties. *Westfield Ins. Co. v. Wensmann, Inc.*, 840 N.W.2d 438, 446 (Minn. App. 2013), *review denied* (Minn. Feb. 26, 2014). Here, Robert Brackey filed his motion to intervene less than a month after Kagel filed the initial complaint in June 2012. Therefore, Robert Brackey's motion to intervene was timely.

*Interest*

A membership interest in an LLC is a general intangible. Minn. Stat. § 336.8-103(c) (2014); *see* Minn. Stat. § 336.9-102(a)(42) (2014) (defining "general intangible"). Robert Brackey perfected his security interest in Brackey's KAC membership interest by filing a UCC financing statement. *See* Minn. Stat. § 336.9-310(a) (2014) (stating the general rule that most security interests are perfected by filing). And Minnesota's LLC law allows an LLC member to grant a security interest in a membership interest without obtaining the consent of other LLC members. Minn. Stat. § 332B.313, subd. 7 (2014). Therefore, Robert Brackey demonstrated an interest related to the property in the underlying action.

*Ability to Protect Interest*

A security interest generally continues in transferred collateral and attaches to identifiable proceeds of collateral. Minn. Stat. § 336.9-315(a) (2014). When Brackey transferred his interest to Kagel, no action was taken to eradicate Robert Brackey's security interest. *See id.* (a)(1) (explaining that a security interest remains with

16

transferred collateral "unless the secured party authorized the disposition free of the security interest"). Therefore, when Robert Brackey's motion to intervene was denied, his ability to protect his interest was impaired.

*Not Adequately Represented*

Finally, Robert Brackey's interests were not adequately represented. Brackey did not represent Robert Brackey's interests because Brackey was Robert Brackey's debtor and Brackey's interest was to obtain the maximum reduction in Kagel's judgment against him. Similarly, Kagel did not represent Robert Brackey's interests because Kagel's interest was to obtain Brackey's interest and dispose of KAC's property. Therefore, Robert Brackey's interests were not adequately represented.

The district court erred when it dismissed Robert Brackey's motion to intervene as a matter of right under Minn. R. Civ. P. 24.01. In its May 2014 order, the district court stated that the leftover sale proceeds would go to Kagel as a judgment creditor, but Kagel released his judgment lien against KAC's property to consummate the sale. The leftover proceeds from the sale of KAC's property to BCEDA were paid to KAC, not Kagel directly. Thus, Kagel received the sale proceeds in his capacity as an LLC member, not as a judgment creditor as thought by the district court.

Robert Brackey was entitled to a determination of what, if anything, he was entitled to receive on account of his perfected security interest in Brackey's former membership interest in KAC, and we therefore reverse and remand on that point.

**IV.**

Through his related appeal, Kagel asserts that the district court abused its discretion when it denied his request for attorney fees and costs against Robert Brackey. "The standard of review for an appellate court examining an award of attorney fees is whether the district court abused its discretion." *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999).

Kagel contends that the district court abused its discretion because Robert Brackey was a party to the action below and because Robert Brackey funded Brackey's litigation. We are not persuaded. First, the district court dismissed Robert Brackey's motion to intervene with prejudice, meaning he was never a party to the action. Second, Kagel cites no authority to support the proposition that a person who funds litigation may be ordered to pay attorney fees and costs on that basis. Therefore, we do not consider this argument. *See Ganguli v. Univ. of Minn.*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (declining to address allegations unsupported by legal analysis or citation).

The district court did not abuse its discretion in declining Kagel's request for attorney fees and costs from Robert Brackey. But because we have reversed the district court's dismissal of Robert Brackey's motion to intervene, the district court may now reconsider an award of attorney fees and costs against Robert Brackey.

**Affirmed in part, reversed in part, and remanded.**